# EXHIBIT B

# Memorandum

U.S. Department
of Transportation
**MARITIME ADMINISTRATION**

Subject: Report of Investigation and Recommendation regarding Debarment of Overseas Shipholding Group, Inc.

Date: May 17, 2007

From: Elizabeth Megginson
Chief Counsel

Reply to Attn. of:

To: Sean T. Connaughton
Debarring Official and Maritime Administrator

In December, Overseas Shipholding Group, Inc. ("OSG") pled guilty to thirty-one felony counts of criminal violations of the Clean Water Act/Oil Pollution Act and the Act to Prevent Pollution from Ships. In addition to one count of deliberate oil pollution, OSG pled guilty to charges that OSG knowingly and willfully conspired to make false statements, falsified or failed to maintain vessel record books, made and used false writings and, in one case, obstructed an agency proceeding. All of the misconduct occurred in connection with the discharge of oily water and oily sludge through, or around, the oily water separators required by the regulation, statute and international convention. The cases were brought by the Department of Justice's Environmental Crimes Division in California, Maine, Massachusetts, North Carolina and Texas and sentencing has occurred in all districts except North Carolina.

Due to the company's status as a Maritime Security Program recipient and given the Maritime Administration's ("MARAD") responsibility for oversight and interface with the maritime industry, MARAD accepted lead agency status in determining whether OSG should be suspended or debarred from government business under Governmentwide Debarment and Suspension (Nonprocurement) regulations. ("Nonprocurement Rules") Part 29 of Title 49 of the Code of Federal Regulations contains the implementing regulations applicable to MARAD.

Under DOT's Nonprocurement Rules, the "Debarring official" is the designated head of a DOT operating administration or an official designated by the head. After MARAD became the lead agency for this action, the Maritime Administrator chose to retain his authority as Debarring Official for this action.[1]

[1] Under Maritime Administration Order (MAO) 22-1, entitled Office of Chief Counsel, the Secretary of the Maritime Administration has been delegated the authority to impose suspensions and debarments. Notwithstanding this delegation, the Administrator retains that authority for use at his discretion.

At your request, the Office of Chief Counsel investigated the circumstances surrounding the criminal conduct encompassed by the plea agreement and joint factual statement, to assess whether to propose debarment of OSG under the Nonprocurement Rules.

Under the Nonprocurement Rules, cause for debarment exists where a company has been convicted of the "[c]ommission of ... falsification ... of records, making false statements, ... making false claims, or obstruction of justice." 49 C.F.R. § 29.800(a)(3). Except for the one count of knowingly discharging a harmful quantity of oil in North Carolina waters, all the crimes to which OSG has pled guilty and been sentenced constitute "cause" for debarment.

Once cause for debarment has been established, the burden shifts to the company to demonstrate that it is presently responsible and that debarment is not necessary. OSG has submitted written and oral information to demonstrate its presently responsibility. It provided a comprehensive summary of the investigation, the Plea Agreement ("Plea"), and the court-approved Environmental Compliance Plan ("ECP") as well as other measures OSG had undertaken to correct and eliminate the criminal conduct in which its employees had engaged. OSG and its counsel provided a detailed oral briefing which was also attended by a representative from the Environmental Protection Agency's Office of Suspension and Debarment. Our office also spoke with Coast Guard and the lead Department of Justice attorney in the Environmental Crimes Division responsible for prosecuting the case and negotiating the Plea and ECP to obtain information from them regarding the crimes and the corrective action being undertaken.

---

Debarment is to be undertaken to protect the public interest, not as further punishment for a crime. 49 C.F.R. § 29.110. Under the Nonprocurement Rules, when considering whether debarment is appropriate, mitigating and aggravating factors may be considered. 49 C.F.R. § 29.860

Aggravating factors

We have reviewed the Plea, Joint Factual Statement and Criminal Informations filed against OSG as well as the indictments brought against its engineers and the available decisions in those cases. The Coast Guard provided an oral briefing about the investigation and the conduct to which OSG pled guilty. The crimes are significant. The harm and impact of those crimes in terms of the environmental damage that may have resulted from the wrong-doings are incalculable and unknowable. The frequency and duration of the wrongdoing and its pervasiveness among high ranking officers who directed subordinates to break the law, are of particular concern since these facts demonstrate a culture that disregards the law with impunity.

Mitigating factors

OSG has accepted responsibility for the wrongdoing of its employees and recognizes the seriousness of the misconduct. OSG also accepts responsibility for the management failures which allowed such pervasive misconduct to flourish undiscovered. Despite these management failures, the investigation did not show that any corporate officials were involved in, planned, directed or condoned the misconduct. As confirmed by DOJ and Coast Guard, OSG cooperated to a great extent with the investigation and half the violations to which OSG pled were self-reported violations that occurred after the commencement of the investigation. OSG conducted its own internal investigation once it became aware of the misconduct and provided many of the results to the government, waiving privilege in some instances. OSG terminated the employment of the Chief Engineers involved, declined to reemploy some engine room personnel involved in the misconduct and took other appropriate personnel action against subordinates. Even so, OSG worked with DOJ to ensure that any employees it needed for the criminal investigation, including those OSG would otherwise have terminated, remained available for DOJ's use in the appropriate jurisdiction. OSG has paid $37 million in penalties, including $9.2 in organizational community service payments, the largest criminal penalty any company has paid for such environmental crimes. The Court has placed the company on three-years probation under a court-mandated Environmental Compliance Plan.

The corrective action and remedial measures undertaken by OSG are a key factor in assessing whether debarment is necessary to protect the government, especially since the crimes involved demonstrate a lack of integrity or honesty essential from a company doing business with the government. The corrective action OSG has agreed to undertake is significant and is primarily encompassed in the Plea and a court-approved, court-monitored ECP. Since OSG's three-year probation is dependent upon full compliance with the ECP, it is highly probable that the corrective action required will be fully implemented by OSG. DOJ and Coast Guard personnel involved in investigating the misconduct and negotiating the ECP confirmed OSG's assertion that its ECP and the other corrective actions being implemented by OSG were more extensive and comprehensive than any previous agreement; the ECP is considered the benchmark by which future compliance plans will be measured. DOJ and Coast Guard also indicated that OSG's significant cooperation in the investigation and self-reporting of half the violations to which they pled guilty should mitigate against debarment. They felt debarment of OSG could even be counter-productive to their enforcement efforts since it would set a bad example to further penalize a company that has cooperated extensively, pled guilty and been sentenced to three-years probation, agreed to pay huge fines and community service, and agreed to implement an undeniably comprehensive and expensive Environmental Compliance Plan to ensure future compliance by its company and employees.

The only mitigating or aggravating factor remaining is whether the company has had adequate time to eliminate the circumstances which led to the wrongdoing. The corrective measures set forth in the Plea and ECP and in the supplementary materials

submitted to this office by OSG constitute a significant corporate commitment to combat and eliminate the criminal conduct engaged in by so many of its employees. The effectiveness of those measures, however, remains to be seen. Consequently a settlement agreement contingent upon the company's continued compliance with the terms of probation is warranted.

Recommendation

Based on our review of these documents and discussions with OSG, Coast Guard, DOJ and EPA, I recommend that, in lieu of debarring OSG, the Agency enter into a Settlement Agreement with OSG whereby the company agrees to comply in all respects with the conditions of the three-year probation imposed by the Court. I recommend including in that agreement a condition which provides that if, at any time prior to the completion of probation, the Court finds that OSG has substantially violated the terms of its parole, such a finding by the Court shall be deemed a violation of the settlement agreement with MARAD and shall constitute grounds for immediate issuance of a Notice of Proposed Debarment to OSG and resumption of this administrative action.

I also recommend the agreement require OSG to provide MARAD with copies of reports submitted to the Court by the Court-appointed monitor. I further recommend we require them to provide information and updates on several actions apparently outside the scope of the ECP and Plea; specifically, (1) Enviro-Logger technology upgrades being developed with Coast Guard; and (2) the prototyping of emerging Oily Water Seperator technologies.[2] The Agreement should also encourage the commercialization of the technology developed by OSG to combat this problem, like the Enviro-Tag and Enviro-Logger systems and require OSG to furnish copies of the studies to be undertaken by the National Fish and Wildlife Foundation into waste stream management and the effectiveness of existing Oily Water Separators as community service.[3]

I therefore request authority to enter into negotiations with OSG to resolves this matter via a settlement agreement in lieu of debarment.

Approved Denied

Sean T. Connaughton
Debarring Official and Maritime Administrator

18 MAY 2007
Date

[2] See pages 34-36 of the April 12, 2007 letter submitted by OSG's counsel John Pavlick to myself.
[3] See page 16 of the Plea.

05/18/2007 FRI 17:01 [TX/RX NO 7130]

# EXHIBIT C

U.S. Department
of Transportation
**MARITIME ADMINISTRATION**

# Memorandum

Subject: Report of Investigation and Recommendation regarding Debarment of Overseas Shipholding Group, Inc. - CORRECTED

Date: June 12, 2007

From: Elizabeth Megginson
Chief Counsel

Reply to
Attn. of:

To: Sean T. Connaughton
Debarring Official and Maritime Administrator

In December, Overseas Shipholding Group, Inc. ("OSG") pled guilty to thirty-one felony counts of criminal violations of the Clean Water Act/Oil Pollution Act and the Act to Prevent Pollution from Ships. In addition to one count of deliberate oil pollution, OSG pled guilty to charges that OSG knowingly and willfully conspired to make false statements, falsified or failed to maintain vessel record books, made and used false writings and, in one case, obstructed an agency proceeding. All of the misconduct occurred in connection with the discharge of oily water and oily sludge through, or around, the oily water separators required by the regulation, statute and international convention. The cases were brought by the Department of Justice's Environmental Crimes Division in California, Maine, Massachusetts, North Carolina and Texas and sentencing has occurred in all districts except North Carolina.

Due to the company's status as a Maritime Security Program recipient and given the Maritime Administration's ("MARAD") responsibility for oversight and interface with the maritime industry, MARAD accepted lead agency status in determining whether OSG should be suspended or debarred from government business under Governmentwide Debarment and Suspension (Nonprocurement) regulations. ("Nonprocurement Rules") Part 29 of Title 49 of the Code of Federal Regulations contains the implementing regulations applicable to MARAD.

Under DOT's Nonprocurement Rules, the "Debarring official" is the designated head of a DOT operating administration or an official designated by the head. After MARAD became the lead agency for this action, the Maritime Administrator chose to retain his authority as Debarring Official for this action.[1]

[1] Under Maritime Administration Order (MAO) 22-1, entitled Office of Chief Counsel, the Secretary of the Maritime Administration has been delegated the authority to impose suspensions and debarments. Notwithstanding this delegation, the Administrator retains that authority for use at his discretion.

At your request, the Office of Chief Counsel investigated the circumstances surrounding the criminal conduct encompassed by the plea agreement and joint factual statement, to assess whether to propose debarment of OSG under the Nonprocurement Rules.

Under the Nonprocurement Rules, cause for debarment exists where a company has been convicted of the "[c]ommission of ... falsification ... of records, making false statements, ... making false claims, or obstruction of justice." 49 C.F.R. § 29.800(a)(3). Except for the one count of knowingly discharging a harmful quantity of oil in North Carolina waters, all the crimes to which OSG has pled guilty and been sentenced constitute "cause" for debarment.

Once cause for debarment has been established, the burden shifts to the company to demonstrate that it is presently responsible and that debarment is not necessary. OSG has submitted written and oral information to demonstrate its presently responsibility. It provided a comprehensive summary of the investigation, the Plea Agreement ("Plea"), and the court-approved Environmental Compliance Plan ("ECP") as well as other measures OSG had undertaken to correct and eliminate the criminal conduct in which its employees had engaged. OSG and its counsel provided a detailed oral briefing which was also attended by a representative from the Environmental Protection Agency's Office of Suspension and Debarment. Our office also spoke with Coast Guard and the lead Department of Justice attorney in the Environmental Crimes Division responsible for prosecuting the case and negotiating the Plea and ECP to obtain information from them regarding the crimes and the corrective action being undertaken.

---

Debarment is to be undertaken to protect the public interest, not as further punishment for a crime. 49 C.F.R. § 29.110. Under the Nonprocurement Rules, when considering whether debarment is appropriate, mitigating and aggravating factors may be considered. 49 C.F.R. § 29.860

Aggravating factors

We have reviewed the Plea, Joint Factual Statement and Criminal Informations filed against OSG as well as the indictments brought against its engineers and the available decisions in those cases. The Coast Guard provided an oral briefing about the investigation and the conduct to which OSG pled guilty. The crimes are significant. The harm and impact of those crimes in terms of the environmental damage that may have resulted from the wrong-doings are incalculable and unknowable. The frequency and duration of the wrongdoing and its pervasiveness among high ranking officers who directed subordinates to break the law, are of particular concern since these facts demonstrate a culture that disregards the law with impunity.

Mitigating factors

OSG has accepted responsibility for the wrongdoing of its employees and recognizes the seriousness of the misconduct. OSG also accepts responsibility for the management failures which allowed such pervasive misconduct to flourish undiscovered. Despite these management failures, the investigation did not show that any corporate officials were involved in, planned, directed or condoned the misconduct. As confirmed by DOJ and Coast

Guard, OSG cooperated to a great extent with the investigation and half the violations to which OSG pled were self-reported violations that occurred after the commencement of the investigation. OSG conducted its own internal investigation once it became aware of the misconduct and provided many of the results to the government, waiving privilege in some instances. OSG terminated the employment of the Chief Engineers involved, declined to reemploy some engine room personnel involved in the misconduct and took other appropriate personnel action against subordinates. Even so, OSG worked with DOJ to ensure that any employees it needed for the criminal investigation, including those OSG would otherwise have terminated, remained available for DOJ's use in the appropriate jurisdiction. OSG has paid $37 million in penalties, including $9.2 in organizational community service payments, the largest criminal penalty any company has paid for such environmental crimes. The Court has placed the company on three-years probation under a court-mandated Environmental Compliance Plan.

The corrective action and remedial measures undertaken by OSG are a key factor in assessing whether debarment is necessary to protect the government, especially since the crimes involved demonstrate a lack of integrity or honesty essential from a company doing business with the government. The corrective action OSG has agreed to undertake is significant and is primarily encompassed in the Plea and a court-approved, court-monitored ECP. Since OSG's three-year probation is dependent upon full compliance with the ECP, it is highly probable that the corrective action required will be fully implemented by OSG. DOJ and Coast Guard personnel involved in investigating the misconduct and negotiating the ECP confirmed OSG's assertion that it's ECP and the other corrective actions being implemented by OSG were more extensive and comprehensive than any previous agreement; the ECP is considered the benchmark by which future compliance plans will be measured. DOJ and Coast Guard also verified OSG's significant cooperation in the investigation and its self-reporting of many of the violations to which it pled guilty. While DOJ does not take a position on debarment, in court filings it stated that although OSG's conduct was serious and warranted the largest-ever penalty, the company's significant cooperation and compliance measures mitigated against an even larger criminal sentence. After my investigation, I believe that OSG's significant cooperation and the comprehensive Environmental Compliance Plan also strongly mitigate against debarment.

The only mitigating or aggravating factor remaining is whether the company has had adequate time to eliminate the circumstances which led to the wrongdoing. The corrective measures set forth in the Plea and ECP and in the supplementary materials submitted to this office by OSG constitute a significant corporate commitment to combat and eliminate the criminal conduct engaged in by so many of its employees. The effectiveness of those measures, however, remains to be seen. Consequently a settlement agreement contingent upon the company's continued compliance with the terms of probation is warranted.

**Potential Debarment under 40 C.F.R. Part 29 - Overseas Shipholding Group, Inc.**

**Recommendation**

I have completed my investigation into whether Overseas Shipholding Group, Inc. (OSG) should be recommended for government-wide debarment under 49 C.F.R. Part 29 as a result of its guilty plea to thirty-one felony counts of criminal violations of the Clean Water Act/Oil Pollution Act and the Act to Prevent Pollution from Ships. Based on my review of the plea and associated documents, written and oral submissions from OSG addressing their present responsibility, and discussions with officials of the Department of Justice, the Coast Guard, and the Environmental Protection Agency regarding the investigation, the plea and the court-approved and monitored Environmental Compliance Plan, I recommend that, in lieu of debarring OSG, the Agency enter into a Settlement Agreement with OSG whereby the company agrees to comply in all respects with the conditions of the three-year probation imposed by the Court. I recommend including in that agreement a condition which provides that if, at any time prior to the completion of probation, the Court finds that OSG has substantially violated the terms of its parole, such a finding by the Court shall be deemed a violation of the settlement agreement with MARAD and shall constitute grounds for immediate issuance of a Notice of Proposed Debarment to OSG and resumption of this administrative action. I also recommend additional areas be addressed in the settlement agreement. (See attached Negotiation Recommendations.)

I therefore request authority to enter into negotiations with OSG to resolve this matter via a settlement agreement in lieu of debarment.

Respectfully submitted,

[signature] 6/12/07

Elizabeth R. Megginson
Chief Counsel, Maritime Administration

Date

**Approval and Authorization**

I hereby approve your recommendation to enter into a Settlement Agreement with Overseas Shipholding Group, Inc. in lieu of government-wide debarment under 49 C.F.R. Part 29 and authorize you to enter into negotiations as outlined above to effect said Settlement Agreement for my final approval and signature.

Approved (circled) Denied

[signature] 12 JUNE 2007

Sean T. Connaughton
Debarring Official and Maritime Administrator

Date