**Protected Information to be Disclosed Only in Accordance With U.S. Court of Federal Claims Protective Order**

Case No. 07-561C
Judge Hodges

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

OSG PRODUCT TANKERS LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant, and

USS PRODUCT CARRIERS, LLC,

Defendant-Intervenor.

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CROSS MOTION TO CORRECT THE ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

TARA KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-1709
Fax: (202) 307-0972
Attorneys for Defendant

OF COUNSEL
CARA CONLIN
JOEL WEGER
Military Sealift Command
914 Charles Morris Ct. SE
Washington Navy Yard
Washington, D.C. 20398

August 27, 2007

## TABLE OF CONTENTS


STATEMENT OF FACTS .......... 5

ARGUMENT .......... 7

I. Standard of Review .......... 7

II. OSG Lacks Standing To Challenge Any Aspect Of The Procurement Other Than Its Own Non-Responsibility Determination .......... 10

III. OSG Has Not Established Any Basis For Discovery Regarding The Issue Of Possible Bias Or Bad Faith .......... 12

A. Standard of Review For Allegations Of Bad Faith .......... 12

B. OSG's Disagreement With Ms. Fischer's Evaluations of USS Does Not Constitute Evidence Of Bad Faith .......... 13

C. The Alleged "Smoking Gun" Does Not Constitute Evidence Of Bad Faith Entitling OSG To Discovery .......... 14

D. The March 28, 2007 Extension Of Time To Submit Final Proposal Revisions Is Explained By The Administrative Record, And Does Not Constitute Evidence Of Bad Faith .......... 16

IV. The Deposition Of Ms. Fischer Is Unnecessary Because The Basis For Her Determination That OSG Was Non-Responsible Is Contained In The Administrative Record .......... 19

A. Standard Of Review For Contracting Officer's Responsibility Determinations In Bid Protest Actions .......... 20

B. OSG's Disagreement With Ms. Fischer's Responsibility Determination Is Grounds For A Motion For Judgment Upon The Administrative Record, Not Grounds For Discovery .......... 22

C. The Administrative Record Identifies The Basis For Ms. Fischer's Conclusion [redacted] .......... 25




Protected Information to be Disclosed Only in Accordance With U.S. Court of Federal Claims Protective Order

D. The Administrative Record Is Sufficient To Enable The Court To Review Whether Ms. Fischer Improperly Failed To Distinguish OSG From OSG, Inc. For Purposes of Determining Whether The Responsibility Determination Lacked A Rational Basis .......... 27

V. The Discovery OSG Seeks Through The Deposition Of Ms. Fischer Is Explicitly Prohibited By *Impresa* .......... 30

VI. The Administrative Record Should Not Be Supplemented With Information That Was Not Before Ms. Fischer In Making Her Responsibility Determination .......... 31

A. The Court Cannot Consider Ms. Benzer's Deposition Because It Was Not Before The Contracting Officer, And Is Irrelevant To The Inquiry In This Litigation .......... 32

B. The Relevant Communications With The U.S. Transportation Command Are Contained In The Administrative Record .......... 33

C. The Relevant Communications With Other Federal Agencies Are Contained In The Administrative Record .......... 33

D. The Record Should Not Be Supplemented With Any Additional Briefing Materials .......... 35

VII. In The Unlikely Event That The Court Determines That Any Supplementation Of The Administrative Record Is Appropriate, Any Discovery Must Be Narrowly Tailored .......... 36

VIII. Defendant's Cross-Motion To Correct Errors In The Administrative Record .... 37

CONCLUSION .......... 39



**Protected Information to be Disclosed Only in Accordance With U.S. Court of Federal Claims Protective Order**

# TABLE OF AUTHORITIES

## CASES

Advanced Data Concepts, Inc. v. United States,
216 F.3d 1054 (Fed. Cir. 2000) ........ 8, 34

Aero Corp. v. United States,
38 Fed. Cl. 408 (1997) ........ 8

Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States,
56 Fed. Cl. 502 (2003) ........ 24

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999) ........ 11

Bender Shipbuilding & Repair Co., Inc. v. United States,
297 F.3d 1358 (Fed. Cir. 2002) ........ 20

Beta Analytics v. United States,
61 Fed. Cl. 223 (2004) ........ passim

C.A.C.I., Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) ........ 13

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971) ........ 13

Cubic Application, Inc., v. United States,
37 Fed. Cl. 339 (1997) ........ 8

Dyncorp Int'l LLC v. United States,
76 Fed. Cl. 528 (2007) ........ 10, 33

Emerald Coast Finest Produce Co. v. United States,
76 Fed. Cl. 445 (2007) ........ 9, 26

First Enter. v. United States,
61 Fed. Cl. 109 (2004) ........ 11

Four Points By Sheraton v. United States,
63 Fed. Cl. 341 (2004) ........ 14, 24

Galen Medical Assocs., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) ........ 12, 18

Great Lakes Dredge & Dock Co. v. United States,
60 Fed. Cl. 350 (2004). ........ 8

Gulf Group, Inc. v. United States,
61 Fed. Cl. 338 (2006). ........ 36

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001)........ passim

Info. Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003)........ 11, 14, 15, 24

John C. Grimberg Co. v. United States,
185 F.3d 1297 (Fed. Cir. 1999)........ 16, 20, 21

Myers Investigative & Sec. Servs. v. United States,
47 Fed. Cl. 605 (2000). ........ 10, 11

Myers Investigative & Sec. Servs. v. United States,
275 F.3d 1366 (Fed. Cir. 2002)........ 10, 11, 18

News Printing Co. v. United States,
46 Fed. Cl. 740 (2000). ........ 20

Orion Int'l Techs. v. United States,
60 Fed. Cl. 338 (2004). ........ 13, 24, 27, 37

Pikes Peak Family Hous., LLC v. United States,
40 Fed. Cl. 673 (1998). ........ 8

PNM Constr. v. United States,
13 Cl. Ct. 745 (1987). ........ 10

Precision Standard, Inc. v. United States,
69 Fed. Cl. 738 (2006). ........ 9, 32

Rex Serv. Corp. v. United States,
448 F.3d 1305 (Fed. Cir. 2006)........ 10, 11

Rig Masters, Inc. v. United States,
70 Fed. Cl. 413(2006). ........ 24

Rust Constructors Inc. v. United States,
49 Fed. Cl. 490 (2001). ........ 8

SDS Int'l v. United States,
48 Fed. Cl. 742 (2001). .......... 8

Stapp Towing v. United States,
34 Fed. Cl. 300 (1995). .......... 7

United Enter. & Assocs. v. United States,
70 Fed. Cl. 1 (2006). .......... 21

**STATUTES**

5 U.S.C. § 702. .......... 8

5 U.S.C § 706(2). .......... 8

28 U.S.C. § 1491(b)(4). .......... 7

48 C.F.R. § 9.103(a). .......... passim

48 C.F.R. § 9.104. .......... 7

48 C.F.R. § 9.105-2. .......... 20

48 C.F.R. § 14.402-1. .......... 18

48 C.F.R. § 14.402-3. .......... 18

48 C.F.R. § 15.101-2. .......... 18

48 C.F.R. § 15.207. .......... 19

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| OSG PRODUCT TANKERS LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07-561C<br>Judge Hodges |
| THE UNITED STATES, | ) | |
| Defendant, and | ) | |
| USS PRODUCT CARRIERS, LLC, | ) | Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order |
| Intervenor. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CROSS MOTION TO CORRECT THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits this opposition to the motion of plaintiff, OSG Product Tankers, LLC ("OSG") to supplement the administrative record. On August 20, 2007, OSG filed a motion to supplement the administrative record and 40-page memorandum in support of its motion (the "Motion to Supplement"). The vast majority of this extremely lengthy Motion to Supplement consists of repetitive arguments regarding the ultimate merits of OSG's case. The appropriate forum for OSG to advance such arguments is in its motion for judgment upon the administrative record, not in a motion to supplement the record.

The Court offered the parties the option to resolve the merits of this case in an expedited manner through oral argument, but counsel for OSG declined to pursue that option. Had defendant known that OSG intended to use the Motion to Supplement as an opportunity to argue

the merits of its motion for judgment upon the administrative record in advance of the briefing jointly proposed by the parties, defendant would not have agreed to the comparatively short response time in the Joint Proposed Scheduling Order. For reasons of fundamental fairness, in addition to the fact that the ultimate merits of OSG's case are irrelevant to whether supplementation of the record is necessary, in this opposition, defendant will limit its responses to OSG's arguments regarding supplementation of the administrative record. Defendant reserves its arguments regarding the merits of the case for its response to OSG's motion for judgment upon the administrative record.

Even before defendant filed the administrative record, OSG intended to file a motion to supplement the record. See Joint Proposed Schedule filed July 30, 2007. On August 3, 2007, defendant filed the administrative record, which was over 4,500 pages long. Among those approximately 4,500 pages was a 18-page long responsibility determination by the contracting officer, and literally hundreds of pages that she referenced and relied upon in making her responsibility determination. Despite this, OSG has moved for broad and extensive discovery to supplement the administrative record.

OSG has advanced a wide variety of arguments in support of its motion, evidently hoping that if it throws a sufficient number of arguments at the Court, one will stick. On numerous occasions throughout its motion, OSG actually contends that because the contracting officer's decisions were unsupported by or contrary to the facts in the administrative record, OSG is entitled to discovery in the form of the deposition of the contracting officer. If OSG can establish that the contracting officer's decisions were unsupported by or contrary to the

administrative record, OSG is entitled to judgment upon the administrative record, not the deposition of the contracting officer.

The fact that OSG has not chosen to simply move for judgment upon the administrative record is telling. In OSG's Motion to Supplement, OSG takes extraordinary efforts to divert the Court's attention from the sole issue in this litigation, which is whether OSG can establish that the contracting officer's determination that OSG was non-responsible in light of the ramifications of 33 felonies of its parent corporation, OSG, Inc., was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Thus, the sole question before the Court is whether the contracting officer's decision was rational. The administrative record in this case provides a completely adequate basis upon which the Court can decide the merits of this issue.

However, in hopes of obtaining an opportunity to conduct a "fishing expedition" to generate a valid basis for this protest, OSG seeks discovery based upon allegations of bad faith and bias. These claims primarily relate to the contracting officer's evaluations of the awardee, USS Product Carriers, LLC ("USS"), and an extension granted to all offerors to accommodate [redacted], an unsuccessful offeror for the contract. Neither of these questions have bearing upon the responsibility determination of OSG. OSG could not possibly be entitled to discovery upon these grounds, because as a non-responsible offeror, it lacks standing to challenge any aspect of the procurement other than its own non-responsibility determination.

Furthermore, OSG has identified no evidence of bad faith, and certainly no evidence sufficient to overcome the strong presumption that the Government acts in good faith when

contracting. In fact, many of OSG's claims of bad faith and bias constitute little more than challenges to the contracting officer's evaluations, which should be resolved through motions for judgment upon the administrative record, not discovery requests.

OSG has not demonstrated that the administrative record is insufficient to enable the Court to perform a meaningful review of the contracting officer's responsibility determination and render a decision based upon the record. Much of the discovery sought is in the form of deposition inquiries into the mental decision-making process of the contracting officer, which are prohibited by governing law. Other discovery sought by OSG pertains to information that was either not before the contracting officer at the time of her responsibility determination, or irrelevant to the inquiry at issue, which is whether her responsibility determination was rational. The requested discovery is not only inappropriate within the APA standard for protests mandated in the Tucker Act as amended by the Administrative Disputes Resolution Act ("ADRA"), but, if allowed, will be time-consuming and burdensome, and will needlessly protract and complicate this litigation. Therefore, the Court should deny OSG's motion to supplement the administrative record.

Unfortunately, however, due to defendant's efforts to assemble the administrative record in time to file it by August 3, 2007, the administrative record contains a small number of errors. Defendant has identified a small group of relevant documents that were relied upon by the contracting officer in making the award that were inadvertently omitted from the administrative record. As apparent from the nature of these documents (past performance evaluation surveys for OSG and USS), they are not being added in response to the arguments presented by OSG in

its motion to supplement. Defendant has also identified two documents that were improperly inserted in the administrative record. Accordingly, to avoid potential confusion, defendant cross-moves to correct these errors in the record.

## STATEMENT OF FACTS

On August 31, 2006, the Military Sealift Command ("MSC") issued solicitation No. N00033-06-R-5416 (the "solicitation") for two T-5 replacement product tanker vessels (the "tankers"). AR 2916. The tankers were primarily intended to be used for worldwide transportation of petroleum fuel for the Defense Energy Support Center ("DESC"). AR 2930, 2900, 2882, 2884, 2903-04. The evaluation criteria established in the solicitation called for award to the lowest-priced, technically acceptable offeror with satisfactory past performance. AR 2994.

OSG submitted an offer in response to the solicitation on November 30, 2006. AR 1643. On December 19, 2006, OSG's parent company, OSG, Inc., pled guilty to 33 felony counts related to deliberate vessel pollution from nine ships and false pollution log entries in three additional ships in six U.S. ports around the nation. AR 1967, 1888-1915, 1928-54. Pursuant to a Joint Factual Statement submitted by the United States and OSG, Inc., crew members aboard the nine ships, including senior ship engineers, engaged in deliberate discharges of oily mixtures in a manner that intentionally circumvented required pollution prevention equipment and violated United States law. AR 1889. These illegal discharges were concealed by use of false Oil Record Books, by making required discharges at night, and by hiding bypass equipment during port calls. Id. OSG, Inc's $37 million plea agreement was the largest-ever criminal penalty involving deliberate vessel pollution, and OSG, Inc. was placed upon organizational

probation. AR 1918, 1925, 1934-36. Under the plea agreement, OSG, Inc. was also required to fund and implement a detailed Environmental Compliance Plan ("ECP"), which applied to all oceangoing vessels that were technically managed or manned by OSG, Inc. AR 1936, 1980.

The contracting officer for the solicitation, Diana Fischer, was aware of OSG Inc.'s criminal violations and plea agreement and had discussions with OSG regarding the issue prior to January 23, 2007. AR 3554; Compl.¶ 28. On April 27, 2007, Ms. Fischer invited OSG to present information bearing upon its responsibility status by means of an oral presentation and responses to over 20 written questions. AR 3781. She also advised OSG that she would be convening a panel of experts to provide advice in their areas of expertise relating to OSG's responsibility. Id.

On May 1, 2007, OSG provided Ms. Fischer with written responses that it had provided to the United States Maritime Administration ("MARAD"), a division of the Department of Transportation ("DOT"), which had acted as lead agency in investigating whether OSG, Inc. should be debarred under DOT's Nonprocurment Debarment and Suspension Common Rule, 49 C.F.R. Part 29. AR 1961, AR 2521-2874. On May 4, 2007, Ms. Fischer, the panel members, and counsel for MSC met with representatives of OSG and counsel for OSG. AR 2072-73. On May 8, 2007, OSG provided written responses to the questions posed by Ms. Fischer. AR 1807-64.

After a series of amendments to the solicitation and proposal revisions, final offers were submitted on March 30, 2007. See AR 182-83; 1582-83. OSG and USS submitted the only offers that Ms. Fischer determined to be technically acceptable with satisfactory past

performance. AR 3570-80. OSG was determined to be the lowest-priced technically acceptable offeror. Id., AR 3429.

However, Ms. Fischer determined that the award could not be made to OSG pursuant to 48 C.F.R. § 9.104, because she could not make an affirmative determination that OSG was responsible, as required by 48 C.F.R. § 9.103(a). AR 3448. On June 19, 2007, Ms. Fischer executed an 18-page long non-responsibility determination for OSG, [redacted]. AR 3431-52.

Ms. Fischer then conducted a responsibility determination for the next lowest-priced technically acceptable offeror, USS. AR 3774-79. Ms. Fischer made an affirmative determination of responsibility for USS and on July 6, 2007, the contract was awarded to USS. AR 4064. On July 25, 2007, OSG filed this bid protest action.

## ARGUMENT

### I. Standard of Review

Discovery in a bid protest is not a matter of right, and is permissible only under extremely limited circumstances. See Stapp Towing v. United States, 34 Fed. Cl. 300, 307-08 (1995). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4). It is well-settled that the APA does not permit the Court to undertake a de novo review of agency action, but rather limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"

based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A).[1]

This Court's review of bid protests pursuant to this deferential standard is limited to the administrative record already in existence, "'not some new record made initially by the reviewing court.'" Pikes Peak Family Hous., LLC v. United States, 40 Fed. Cl. 673, 676 (1998)(quoting Cubic Application, Inc., v. United States, 37 Fed. Cl. 339, 342 (1997)). Accordingly, this Court confines its review to the administrative record, i.e., the record that was before the decision maker at the time of the award. Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (citations omitted); Aero Corp. v. United States, 38 Fed. Cl. 408, 410 (1997). The administrative record should not include materials created or obtained subsequent to the time the agency decided to take the challenged action, since such materials could not have been considered by the agency in making its decision. Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 359 (2004).

Therefore, in the context of a bid protest, courts traditionally have confined the administrative record to that developed by the agency prior to its decision to bestow the contract award. See Rust Constructors Inc. v. United States, 49 Fed. Cl. 490, 496 (2001); SDS Int'l v. United States, 48 Fed. Cl. 742, 747 (2001). Only when the Court cannot conduct meaningful judicial review from the administrative record is supplementation of the record appropriate. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (citation omitted). Documents that were created after the contract award, that could not have been considered by the contracting officer are generally not considered proper supplements

[1] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2).

to the administrative record. Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 450(2007); Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 745-46 (2006).

In determining whether to look outside of the record for an explanation of an agency decision, the Court must start its analysis with the presumption of regularity that attaches to agency decision-making. See Impresa, 238 F.3d at 1338 ("Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious. The litigant challenging that presumption necessarily bears a heavy burden.") (citation and footnote omitted). Consequently, a protestor "necessarily bears a heavy burden" to establish that it should be permitted to take depositions of agency personnel. Id.

Although the court in Impresa allowed the taking of one limited deposition to obtain an explanation for the contracting officer's determination, it noted that "[t]his is a most unusual case." Id. at 1341. As the court expressly cautioned: "[W]e wish to make clear that we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. Such inquiries are inappropriate." Id. at 1329. Emphasizing the point, the court further stated, "[W]e wish to emphasize that such discovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's . . . determination." Id. at 1340-41. Therefore, even where the Court finds that record evidence suggests the agency decision was arbitrary or capricious, discovery should be restricted to "placing on the record the basis for the contracting officer's . . . determination." Id. at 1339.

The Federal Circuit's decision in Impresa is particularly instructive here because the facts

in Impresa are the mirror image of the facts in the present case. In Impresa, the Federal Circuit endorsed the extraordinary procedure of even the most limited inquiry into the contracting officer's reasoning because he had found a company to be responsible with no explanation, despite knowledge of the criminal conduct of the individuals who controlled the company. Id. at 1328-29; 1338-39. The glaring disconnect between the known criminal activities of the company and a finding of responsibility created a gap in the administrative record that required supplementation. Id. at 1338-39. Here, there is no justification of OSG's requested supplementation because the contracting officer made the rational determination of non-responsibility [redacted] This is the complete opposite of the situation in Impresa which the Federal Circuit found could justify a deposition of the contracting officer.

## II. OSG Lacks Standing To Challenge Any Aspect of The Procurement Other Than Its Own Non-Responsibility Determination

As a jurisdictional matter, OSG could not possibly be entitled to discovery regarding the pricing, responsibility determination, or treatment of USS or any other offeror, because OSG lacks standing to challenge any aspect of the procurement other than its own non-responsibility determination. If the Court determines that Ms. Fischer's non-responsibility determination should be upheld, OSG cannot receive the award, regardless of whether it can demonstrate any other alleged errors in the procurement process.

Standing is an element of the Court's jurisdiction over bid protest actions. Dyncorp Int'l LLC v. United States, 76 Fed. Cl. 528, 536 (2007); see also Rex Serv. Corp. v. United States,

448 F.3d 1305, 1307-08 (Fed. Cir. 2006). To establish standing to protest a procurement decision, a plaintiff must establish prejudice or injury as a result of the agency action. Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002). Because prejudice is an element of standing, the issue of prejudice must be reached before addressing the merits of the protest. Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). To establish that it was prejudiced by an error in the procurement, OSG must establish that but for that alleged error, there was a substantial chance that it would have received the contract. See Info. Tech. & Applications Corp., 316 F.3d at 1319; Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

The contract could only be awarded to an offeror that the contracting officer affirmatively found to be responsible. See 48 C.F.R. § 9.103(a); Myers, 275 F.3d at 1370; First Enter. v. United States, 61 Fed. Cl. 109, 124 fn. 24 (2004); PNM Constr. v. United States, 13 Cl. Ct. 745, 748 (1987). Therefore, if OSG is not responsible, it did not have a substantial chance of receiving the award, and lacks standing to protest any other aspect of the solicitation, including the pricing or responsibility determination of any other offeror. See Myers, 275 F.3d at 1371.

Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002), is specifically on point for the present case. In Myers, the Federal Circuit found that an offeror challenging a sole source award was not an interested party because it failed to demonstrate that it was a responsible contractor. 275 F.3d at 1370. The Federal Circuit reached this holding, although the Court of Federal Claims held that the agency had ***actually*** violated regulations in awarding the sole source contract. Myers Investigative & Sec. Servs. v. United States, 47 Fed. Cl. 605, 620 (2000). As in Myers, even if OSG could demonstrate there had been

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

some other violation in the procurement process (which it cannot), OSG lacks standing to challenge that alleged violation if it is not a responsible offeror.

Not only does OSG lack standing to challenge other aspects of the procurement, but, as a practical matter, these issues are completely unnecessary to resolve this litigation. If OSG is a responsible offeror, it necessarily receives the award. The contract at issue was to be awarded to the responsible offeror whose technically acceptable proposal represented the lowest overall price to the Government. AR 2994. If OSG were a responsible offeror, it would have been awarded the contract because it submitted the lowest-priced technically acceptable offer. See AR 3429. The contracting officer did not contend that USS's pricing was preferable to OSG's, and we take no position upon USS's financial stability relative to OSG's. Neither of these factors was the basis for the contracting officer's decision to award the contract to USS.

If, following the motions for judgment upon the administrative record, the Court determines that Ms. Fischer did not have a rational basis for her responsibility determination for OSG, the procurement will be remanded to MSC. Upon remand, if MSC determines that OSG is responsible, MSC ***must*** award the contract to OSG. Accordingly, aside from the fact that OSG lacks standing to pursue discovery based upon any factor other than its own non-responsibility determination, such discovery is completely unnecessary to resolve this litigation.

## III. OSG Has Not Established Any Basis For Discovery Regarding The Issue Of Possible Bias Or Bad Faith

### A. Standard of Review For Allegations of Bad Faith

It is well-settled that Government contract officials are presumed to exercise their duties in good faith. See Galen Medical Assocs., Inc. v. United States, 369 F.3d 1324, 1335 (Fed. Cir.

2004). Allegations of bad faith must rest on a strong evidentiary footing to overcome the normal presumption of regularity and good faith conduct by agency officials. Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 344 (2004). Accordingly, a plaintiff seeking to supplement an administrative record must make "a strong showing of bad faith or improper behavior" to compel the testimony of such officials. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); Orion, 60 Fed. Cl. at 344. . Such a showing requires "hard facts," not inferences based upon "suspicion and innuendo." C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567, 1582 (Fed. Cir. 1983); Beta Analytics v. United States, 61 Fed. Cl. 223, 226 (2004). Given the presumption of good faith, to put facts relating to bad faith into play, a plaintiff must first make a threshold showing of either a motivation for the Government employee to have acted in bad faith, or conduct that is hard to explain absent bad faith. Beta Analytics, 61 Fed. Cl. at 226. OSG has not met this burden, and accordingly, is not entitled to discovery.

### B. OSG's Disagreement With Ms. Fischer's Evaluations of USS Does Not Constitute Evidence of Bad Faith

OSG argues that supplementation of the record is necessary because there is "apparent evidence of bias and unequal treatment in favor of USS Product Carriers in the evaluation of the last two remaining offers." Mot. to Supplement at 22. OSG contends that there is evidence of bias because Ms. Fischer's finding that USS was responsible was unsupported by the administrative record, and because USS's pricing was unbalanced. Mot. to Supplement at 32-34. In this protest, even if true, these arguments prove nothing because it is OSG's responsibility that is at issue, not USS's. Moreover, These arguments amount to little more than disagreement with Ms. Fischer's evaluations of USS, which "is not evidence of bias, and it is insufficient to

overcome the presumption that the contracting officer acted in good faith." Information Technology & Applications Corp., 316 F.3d at1323 n. 2; see also Four Points By Sheraton v. United States, 63 Fed. Cl. 341, 344-45 (2004); Beta Analytics, 61 Fed. Cl. at 226.

OSG's contends that a "different" (presumably more lenient) responsibility standard was used for USS are based upon the contracting officer's consideration of USS's pricing and financial stability. This completely overlooks the fact that OSG was not found non-responsible based upon either its pricing or financial stability. This is not a case where a different responsibility standard is being applied to two similarly situated offerors. The basis of the contracting officer's decision [redacted]. See AR 1766. This was not the case with USS. This argument renders OSG's contention that a "different" responsibility standard was applied in regard to USS's ability to obtain a facility security clearance simply absurd. See Mot. to Supplement at 25-26.

### C. The Alleged "Smoking Gun" Does Not Constitute Evidence of Bad Faith Entitling OSG to Discovery

To support its arguments that there is evidence of bias against OSG, OSG relies upon a January 24, 2007 e-mail from Ms. Fischer to Carole Wieszeck, the Director of Chartering and Ship Operations for MSC, in which Ms. Fischer references discussions that she had with OSG regarding OSG, Inc.'s plea. Mot. to Supplement at 23, 30-31. Ms. Fischer's e-mail states, in relevant part:

> I wanted to give you a quick summary of Discussions we had on Tuesday with OSG and Keystone. In regard to Past Performance OSG argued that the DOJ's report on OSG was primarily violations regarding recordkeeping rather than

> pollution and only one violation of the Clean Water Act.[2] They asserted that the vessels involved in this violation were not U.S. Flag ships and went on to say that they now have an environmental compliance program in place that is fully accepted by the Government. OSG also offered to meet with the Government's counsel to review the DOJ's findings. OSG offered to provide as many references as we wanted to demonstrate that their recent past performance is satisfactory (they assert the negative past performance we have is more than 3 years old). The bottom line is if MARAD doesn't debar OSG, we may have a problem.

AR 3554.

OSG characterizes Ms. Fischer's statement that "[t]he bottom line is if MARAD doesn't debar OSG, we may have a problem" as a "smoking gun" that demonstrates that Ms. Fischer was biased against OSG.[3] Mot. to Supplement at 23, 30-31. OSG appears to want the Court to conclude that the basis for this alleged predisposition to award the contract to OSG was some factor ***other*** than the fact that OSG's parent corporation committed 33 felonies, made false pollution log entries, and had the largest ever criminal penalty regarding deliberate vessel pollution. See Mot. to Supplement at 23. This is, of course, completely implausible in light of the context of Ms. Fischer's statement.

OSG also asserts that "[i]t appears that the referenced 'problem' was how to eliminate Product Tankers from the competition." Mot. to Supplement at 23. It is unclear what OSG's basis for this conclusion is. If Ms. Fischer was, as OSG alleges, biased against OSG and actively seeking a reason to exclude OSG from the procurement, she could have simply found OSG non-

[2] The plea agreement makes clear that OSG, Inc.'s criminal violations were not "primarily violations regarding recordkeeping rather than pollution . . . ." AR 1928-36.

[3] OSG also contends that the e-mail demonstrates that it should be entitled to depose Ms. Wieszek to determine why she felt there would be a problem if MARAD did not debar OSG. Mot. to Supp. at 30. However, the e-mail does not represent that Ms. Wieszeck believed that there would be any problem if MARAD did not debar OSG. See AR 3554.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

responsible based upon the effect of the 33 felony violations of its parent company, OSG, Inc. See John C. Grimberg Co. v. United States, 185 F.3d 1297, 1303 (Fed. Cir. 1999) (a contracting officer may make a responsibility determination without "giving the contractor an opportunity to explain or defend against adverse evidence.").

However, she did not choose to do so. Instead, she provided OSG the opportunity to present evidence and argument regarding its present responsibility, investigated the precise nature of OSG, Inc.'s criminal violations and remedial actions, and convened a panel of experts to assist her in her responsibility determination. There was no legal requirement for Ms. Fischer to take any of these steps. See John C. Grimberg Co., 185 F.3d at1303 ("although the contracting officer is given the discretion to seek additional or clarifying responsibility information from a contractor, he is not obligated to do so."). Ms. Fischer's chosen course of conduct is completely inconsistent with OSG's assertion that she was simply looking for any excuse to "eliminate" OSG from the procurement

### D. The March 28, 2007 Extension of Time to Submit Final Proposal Revisions Is Explained By the Administrative Record, And Does Not Constitute Evidence of Bad Faith

OSG also argues by innuendo and implication that Amendment No. 13 to the solicitation, which extended the time to submit final offers from March 28, 2007 to March 30, 2007, evidences procurement violations and bad faith. Mot. to Supplement at 18-20.

First, OSG contends that there is "insufficient information" in the record explaining the extension, and therefore, a deposition and other forms of discovery are required to explain the extension. Mot. to Supplement at 18-20; 36-38. The relevant facts regarding the extension are fully explained in the administrative record, which contains a March 29, 2007 memorandum to

the file from Ms. Wieszeck explaining the reason for the extension. AR 3157. Ms. Wieszeck's memorandum states:

> All offerors in the competitive range submitted timely FPR's. However, the FPR submitted by [redacted] contained contingency language, which made the offer subject to management approval. This language was previously in [redacted] offer and the company was instructed during discussions that the language needed to be removed in order for their offer to be considered for award. The company acknowledged this instruction . . . .
>
> Because the contingency language was still in [redacted] FPR, but had been previously addressed, the decision was made to contact [redacted] and clarify that the language should have been omitted. The Deputy Director of Contracts and Business Management, Ms. Sally Baldridge, contacted [redacted] via their broker Shipping and Finance, regarding this clarification and [redacted] clarified that they understood that contingency language would render their offer ineligible for award. A further decision, made prior to the deadline time of FPR's, was to extend the receipt time of FPR's to 1500 hours, EDT, 30 March 2007. The intent was to notify all offerors in the competitive range prior to the initial deadline of FPR's, but this was not accomplished until approximately 1430 hours, EDT 28 March 2007, which is when the amendment extending the deadline time for FPR's was released.

AR 3475. Aspects of Ms. Wieszeck's memo are also confirmed elsewhere in the administrative record. See AR 1574 ("As discussed, [redacted] needs additional time before the subject can be removed.); AR 905 ("This offer is subject to the Offeror's Board of Director's Approval."), AR 1559; AR 3572 ("It should be noted that due to administrative delay, Amendment 0013 was not issued until approximately 2:30 PM on 28 March 2007 . . . . FPRs had been received by all offerors at the issuance of Amendment 0013."); AR 3575 ("Although [redacted] offer was technically acceptable, its offer[] was not acceptable as it was conditioned on approval by the company's board of directors.").

OSG identifies absolutely nothing in the record to contradict Ms. Wieszeck's memorandum. Instead, OSG argues that it is entitled to discovery because it does not believe

Ms. Wieszeck. Mot. to Supplement at 18-19, 36 ("MSC ***claims*** that all FPR's were submitted on time on March 28, 2007, but that [redacted] contained contingent language that required removal for the offer to be eligible.")(emphasis added). If such unsupported claims that evidence in the administrative record should not be believed were sufficient to establish the need for discovery, then Congress would not have limited this Court to APA review of bid protests, and discovery would undoubtedly be the rule in bid protest actions rather than the exception.

OSG also attempts to imply procurement impropriety because bids were opened prior to the extension. OSG suggests that because its offer was opened, it must have been shown to other offerors. Mot. to Supplement at 18-20; 36-37. Even if OSG could establish that this were the case, which it certainly cannot, OSG lacks standing to contest this alleged harm, because if it is not a responsible offeror, it did not have a substantial chance of receiving the award but for this purported error. Myers, 275 F.3d at 1370-71; see also Galen Medical Associates, 369 F.3d at 1330, ("It may be that even a proven violation of some procurement regulation, in selecting the competitor, will not necessarily make a good claim.").

In an attempt to obtain discovery that it is not entitled to upon the basis of bad faith allegations, OSG insinuates that the procurement was a "sealed bid" procurement, pursuant to which a bid opening officer is not to open any bids prior to a specified time. See 48 C.F.R. § 14.402-1; 48 C.F.R. § 14.402-3. However, although the solicitation stated that offers should be submitted in sealed envelopes, this was a lowest-priced technically acceptable source solicitation, a form of contracting by negotiation, not sealed bidding. See 48 C.F.R. § 15.101-2. Accordingly, there was no prohibition on the procuring agency opening or reviewing the offers prior to the closing time specified in the source solicitation.

There is no basis for OSG's extremely serious and baseless allegations that MSC showed its offer to any other offeror, which are not only unsupported by anything in the record, but are specifically contradicted by it. AR 3482-83; 3572. Procuring officials are prohibited by law from disclosing source selection information through the source selection process. See 48 C.F.R. § 15.207. Under the "conspiracy theory" suggested by OSG, MSC officials delayed the submission of offers for the specific purpose of showing OSG's offer to other offerors. Afterwards, Ms. Wieszeck created a false memo and placed it in the contract file to conceal the violation of law. MSC also placed false information in the post-negotiation business clearance memo for the contract. AR 3572. OSG's completely unfounded "innuendo and suspicion" that such improbable events occurred is not sufficient to overcome the strong presumption that MSC acted in good faith. See Beta Analytics, 61 Fed. Cl. at 226. Furthermore, given the nature of the final offers submitted, the accusations advanced by OSG make no sense. Presumably, OSG is implying that its bid was shown to USS. However, under this scenario, after reviewing OSG's offer, for some inexplicable reason, USS nevertheless submitted an offer priced significantly higher than OSC's, as did ***every single other offeror***. AR 3575-76.

## IV. The Deposition of Ms. Fischer Is Unnecessary Because The Basis For Her Determination That OSG Was Non-Responsible Is Contained in the Administrative Record

OSG's request for the deposition of Ms. Fischer must be evaluated in the context of the legal standard governing the responsibility determination and the Court's review of such determinations in bid protest actions. In light of the deferential standard of review and detailed rationale provided in the responsibility determination, supplementation of the administrative record is inappropriate and unnecessary.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

### A. Standard of Review for Contracting Officer's Responsibility Determinations in Bid Protest Actions

No purchase or award may be made to an offeror unless the contracting officer makes an affirmative determination of responsibility for the awardee. See 48 C.F.R. § 9.103(a)-(b); Impresa, 238 F.3d at 1329; John C. Grimberg Co., 185 F.3d at1301. In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer must make a determination of non-responsibility. 48 C.F.R. § 9.103(b); Impresa, 238 F.3d at 1334. The contracting officer is not required to explain the basis for finding an offeror responsible. 48 C.F.R. § 9.105-2; Impresa; 238 F.3d at 1334. The Federal Acquisition Regulation ("FAR"), simply requires that, upon making a determination of non-responsibility, the contracting officer "make, sign, and place in the contract file a determination of nonresponsibility, which shall state the basis for the determination." 48 C.F.R. § 9.105-2; Impresa, 238 F.3d at 1334.

"A contracting agency has broad discretion in making responsibility determinations since it must bear the brunt of difficulties experienced in obtaining the required performance." News Printing Co. v. United States, 46 Fed. Cl. 740, 746 (2000). Contracting officers are given wide discretion not only in making responsibility determinations but also in determining the amount of information that is required to make a responsibility determination. Impresa, 238 F.3d at 1334-35; Bender Shipbuilding & Repair Co., Inc. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002); John C. Grimberg Co., 185 F.3d at 1303 ("Although FAR 9.105-1(a) does require the contracting officer to have, or to obtain, enough information to make a responsibility determination, the contracting officer is the arbiter of what, and how much, information he

needs."); United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 29 (2006). In a bid protest action, a contracting officer's determination that an offeror is not responsible must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." John C. Grimberg Co., 185 F.3d at 1300 (quoting 5 U.S.C. § 706).

Although in Impresa Construzioni Geom. Domenico Garufi v. United States, the Federal Circuit allowed the taking of one limited deposition to obtain an explanation for a contracting officer's determination that an offeror was responsible, it noted that "[t]his is a most unusual case." Impresa, 238 F.3d 1324 at 1341. In Impresa, the contracting officer had found an offeror responsible despite the fact that an individual who had controlled the awardee's corporation had been involved in bid-rigging and other criminal activities on previous contracts. Id. at 1328, 1338. Despite this, the contracting officer had found the awardee responsible, but had not provided any explanation at all for the responsibility determination. Id. at 1334. The Federal Circuit noted that it "did not know whether the contracting officer's determination was valid . . . since the contracting officer's reasoning supporting that determination is not apparent from the record. . . " Id. at 1337. Therefore, the Federal Circuit permitted a limited deposition of the contracting officer, "to be confined strictly to placing on the record the basis for the contracting officer's responsibility determination . . . ." Id. at 1339.

The present case is the polar opposite of Impresa. Here, the contracting officer's reasoning supporting the responsibility determination of OSG is set forth in detail in a 18-page long responsibility determination, with hundreds of pages of reference documents cited. The Court can determine precisely which documents the contracting officer relied upon in making her determination, because they are identified in detail at the outset of the responsibility

determination itself. AR 1766-67. Ms. Fischer's 18-page long responsibility determination for OSG, with its hundreds of pages of referenced documents, is more than adequate for the Court to determine whether her decision lacked a rational basis or was in violation of regulation or procedure. If the documents that Ms. Fischer referenced do not support the responsibility determination, OSG can simply move for judgment upon the administrative record on that basis. Therefore, supplementation of the record through the deposition of Ms. Fischer is not appropriate or necessary.

### B. OSG's Disagreement With Ms. Fischer's Responsibility Determination Is Grounds For A Motion for Judgment Upon the Administrative Record, Not Grounds For Discovery

The vast majority of OSG's arguments as to why the deposition of Ms. Fischer is necessary amount to nothing more than disagreements with Ms. Fischer's responsibility determination. In support of its request for discovery, OSG presents extremely argumentative characterizations of Ms. Fischer's findings, and then contends that it should be entitled to her deposition to explain why these characterizations are not the case. Essentially, OSG is arguing that because it has presumed that the responsibility determination is arbitrary and capricious or lacks a rational basis, it should be permitted to depose Ms. Fischer so that it can demand that she justify the determination. OSG's presumptions are wrong, and do not support its protest, much less its request for discovery.

For example, OSG contends that Ms. Fischer's deposition is necessary because "the CO's failure to distinguish between the actual offeror and one of its ultimate parent companies requires supplementation of the record through a deposition of the CO." Mot. to Supplement at 24. No deposition is required to make that argument, and if true, it does not alter that Ms.

Fischer's decision was rational. OSG also argues that Ms. Fischer's deposition is necessary because she should be required to explain her alleged failure to recognize that OSG, Inc.'s violations occurred on international flag and not U.S. flag vessels. Mot. to Supplement at 28-30. Again, no deposition is required to make that argument, and even if Ms. Fischer did not focus on the felonies occurring on international vessels, it does not demonstrate that her decision was not rational.

Similarly, OSG contends that Ms. Fischer's deposition is necessary because her conclusion that environmental non-compliance was not widespread through the shipping industry was unsupported by the administrative record.[4] Mot. to Supplement at 27-28. No deposition is needed to make this argument. Even if violations of law were common in shipping, it certainly does not demonstrate that Ms. Fischer's decision that OSG was not responsible based upon environmental violations was not rational. OSG also contends that Ms. Fischer's deposition is necessary because there is no basis for her finding that it was "likely" that OSG, Inc. would violate the terms of its plea agreement. Mot. to Supplement at 26-27. Again, no deposition is necessary to make this argument. Furthermore, Ms. Fischer did not find that it was "likely" that OSG, Inc. would violate the terms of its plea agreement. [redacted]. AR 1769. In light of OSG Inc.'s 33 felonies, this decision and Ms. Fischer's responsibility decision as a whole were rational.

---

[4] It appears that, in presenting such an argument, OSG essentially contends that OSG, Inc. should be permitted to violate environmental law because "everybody else is doing it."

Finally, OSG contends that Ms. Fischer should be deposed because she failed to recognize that debarment of a parent corporation does not automatically extend to debarment of a subsidiary. Mot. to Supplement at 26-27. No deposition is necessary for OSG to make these arguments. Furthermore, because OSG's performance was guaranteed by OSG, Inc., and OSG, Inc. was on probation for committing 33 felonies, both this decision and Ms. Fischer's responsibility decision as a whole were rational.

OSG's disagreement with Ms. Fischer's responsibility determination is not a basis for discovery. See Information Technology & Applications Corp., 316 F.3d at 1323 n. 2. If OSG can establish the assertions upon which it alleges that this discovery is necessary, it should simply move for judgment upon the administrative record on this basis. See Four Points By Sheraton, 63 Fed. Cl. at 344-45; Beta Analytics, 61 Fed. Cl. 223 at 225; Orion, 60 Fed. Cl. at 346. The record is clear as to what Ms. Fischer relied upon in making her responsibility determination. See AR 1766-67. Either these materials support her determination, or they do not, and there is nothing that the requested discovery could add. Furthermore, as a practical matter, any further justification that Ms. Fischer could offer regarding the responsibility determination beyond what is contained in the record could be disregarded by the Court as a post hoc rationalization, and afforded little weight. See Rig Masters, Inc. v. United States, 70 Fed. Cl. 413, 424 (2006) (the Court "review[s] the materials before the agency when it made its procurement selection and cannot accept any 'post hoc rationalizations' offered as the basis for the decision.") (citing Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 508 (2003)).

Thus, OSG has failed to identify any basis for discovery in this APA review case. At

best, the arguments that OSG has presented in support of its request for discovery are arguments based upon the ultimate merits of its case. We will present more specific arguments upon these issues when we file our motion for judgment upon the administrative record.

### C. The Administrative Record Identifies the Basis for Ms. Fischer's Conclusion That [redacted]

OSG alleges that Ms. Fischer found that there was a "substantial risk" that OSG would not be able to obtain a facility security clearance by the start of contract performance. Mot. To Supplement at 25. Ms. Fischer actually found that [redacted]. See AR 1768-69; see also 48 C.F.R. § 9.103(b) ("No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility."). Therefore, defendant's responses to OSG's arguments upon this issue will be framed in the context of Ms. Fischer's actual determination.

OSG argues that "[b]ased upon the scant record of information regarding her investigation into the ability of OSG to obtain a facilities clearance, it is necessary to depose the CO as to what she asked DSS about the process of obtaining a facility security clearance, what facts she provided to DSS for her hypothetical question, what DSS said to her . . . ." Mot. to Supplement at 26. The discovery requested by OSG is completely unnecessary because the record is clear as to what the CO asked DSS about the process of obtaining a facilities clearance and DSS's response. The record contains a May 16, 2007 e-mail that Ms. Fischer sent to herself, which states:

[redacted]

[redacted]

AR 4134.

In her responsibility determination, Ms. Fischer states:

[redacted]

AR 1768.[6]

Assuming that OSG can demonstrate that Ms. Fischer's responsibility determination was

---

[5] OSG complains that Ms. Fischer's decision to contact the New York DSS office was inappropriate because OSG was headquartered in Tampa. Mot. to Supplement at 9. It is not clear why OSG believes that the answers to Ms. Fischer's questions would have differed depending upon whether she contacted a DSS office in Tampa or New York. Furthermore, OSG listed a New York address on the offers that it submitted to Ms. Fischer. See AR 1584-87; 1625.

[6] The administrative record filed by defendant on August 3, 2007 also contains a July 17, 2007 e-mail from Ms. Fischer stating that she had called DSS to verify that OSG still lacked a security clearance. AR 4135. However, because the information in that e-mail was not before Ms. Fischer at the time of the award or responsibility determination, it is not relevant to the Court's review of Ms. Fischer's responsibility determination. See Emerald Coast Finest Produce, Inc., 76 Fed. Cl. at 450.

irrational because she asked DSS the wrong questions, in its motion for judgment upon the administrative record, OSG will have the opportunity to present whatever arguments it wishes regarding the sufficiency of Ms. Fischer's questions to DSS and her interpretation of responses of the DSS agents. If OSG is can establish that Ms. Fischer did not ask appropriate questions, however, any explanation she could provide as to why would be irrelevant. See Orion, 60 Fed. Cl. at 346. Of course, on its face, Ms. Fischer's responsibility determination would be rational regardless of her inquiries to DSS. For these reasons, the requested discovery will be entirely unhelpful in resolving this litigation.

**D. The Administrative Record Is Sufficient to Enable the Court to Review Whether Ms. Fischer Improperly Failed to Distinguish OSG From OSG, Inc. For Purposes of Determining Whether the Responsibility Determination Lacked a Rational Basis**

Although defendant reserves its arguments on the merits of the responsibility determination for its motion for judgment upon the administrative record, defendant wishes to briefly address the merits of OSG's contention that it is entitled to Ms. Fischer's deposition because Ms. Fischer failed to distinguish between OSG and OSG, Inc. See Mot. to Supplement at 24-25. On April 27, 2007, Ms. Fischer sent a letter to OSG Product Tankers, LLC, c/o Washington Maritime Shipping Corporation, requesting that OSG provide whatever information it believed was relevant to its present responsibility to receive the award in light of OSG, Inc.'s plea to the 33 felonies. AR 1785 ("I want to give OSG the opportunity to provide any information bearing upon its present status."). This letter is referenced as reference "K" to Ms. Fischer's responsibility determination. AR 1785. Therefore, Ms. Fischer's distinction between OSG and OSG, Inc. must be reviewed in the context of the efforts, or lack thereof, that OSG

took to distinguish itself from OSG, Inc.

In response to her letter, Ms. Fischer received a May 1, 2007 letter from OSG Ship Management, Inc., stating that "***Overseas Shipholding Group, Inc.*** ("OSG") received your letter of April 27, 2007, and appreciates the opportunity to review with you the extensive efforts it has taken regarding the issues noted in your letter." (emphasis added) AR 2521. This letter is reference "J" to Ms. Fischer's responsibility determination. See AR 1766. Instead of asserting that OSG was a different entity from OSG, Inc., the letter enclosed OSG, Inc.'s presentation to MARAD regarding the potential debarment of OSG, Inc. AR 2522; 2566-2873.

In questions attached to her April 27, 2007 letter, Ms. Fischer specifically asked OSG: "What is the relationship between OSG Product Tankers, LLC (the offeror under this procurement) and Overseas Shipholding Group, Inc[.,] and how will the [Environmental Compliance Plan] be applied under a MSC contract[?]" AR 1787. OSG responded that "OSG Product Tankers, LLC is an indirect subsidiary of Overseas Shipholding Group, Inc." AR 3818. However, OSG also responded that the ECP applied to all ships managed by OSG, Inc. worldwide because: "it would be difficult for OSG to manage its vessels under different operating standards. Because the ECP applies to all ships managed by OSG, and because it is an integral part of the SMS [Safety Management System], it will be implemented on those ships operating under the MSC contract in exactly the same manner as with any other ship technically managed by OSG." AR 3818.

In addition, the offers, supporting documentation, and technical narratives that OSG itself submitted to Ms. Fischer in hopes of receiving the award demonstrate a marked failure to distinguish between OSG, Inc. and OSG. These offers, supporting documentation, and technical

narratives are contained at reference "A" to Ms. Fischer's non-responsibility determination. They make clear that OSG wanted MSC to view OSG and OSG, Inc. interchangeably, until it became convenient at the time of this protest to assert that "Product Tankers" was a distinct entity from OSG.

For example, the solicitation required offerors to demonstrate a commitment from a U.S. shipyard if they intended to provide newly-built tankers. AR 2989. OSG's final offer contained a letter of commitment demonstrating a commitment between Aker Philadelphia Shipyard ("Aker") and ***OSG America, Inc.*** AR 1580. The letter indicates that the tankers will be bareboat chartered to one of thirteen wholly owned subsidiaries of OSG, Inc., and will in turn be time chartered to OSG Product Tankers, LLC. AR 1579; see also AR 1660. However, the agreement itself is between OSG America, Inc. and Aker, not "OSG Product Tankers" and Aker.

The solicitation required that offerors furnish evidence of adequate financial resources to perform the contract, or ability to obtain such resources. AR 2991. In response to this requirement, OSG provided a SEC form Q-10 for Overseas Shipholding Group, Inc., not OSG Product Tankers. See AR 4352. The solicitation also required offerors to submit a plan for ensuring that the tankers would remain in conformity with the requirements of the charter through the charter period, including industry vetting requirements. AR 2989. OSG submitted a corporate profile as part of its technical narrative in response to the conformity requirement, which stated:

> Overseas Shipholding Group, Inc. (OSG) is a market leader in global energy transportation services . . . .

AR 1652. There is absolutely no mention of OSG Product Tankers, LLC in the corporate profile

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

submitted in the technical narrative. AR 1652-59.

The resumes and employee profiles that OSG submitted with its technical narrative all appear to be for employees of OSG, Inc. or OSG, America, Inc., not OSG Product Tankers. AR 1665-72. In addition, in response to the solicitation's requirement of past performance references, references were submitted for companies other than "OSG Product Tankers." See AR 4541-42. It appears that there are numerous other places in OSG's offers and supporting documents where OSG failed to distinguish between OSG and OSG, Inc., apparently in hopes that OSG, Inc.'s experience and assets would assist OSG in obtaining the award. Defendant will present these additional arguments in its cross-motion for judgment upon the administrative record. For purposes of this response, however, it is important for the Court to be aware that OSG itself used information regarding "OSG, Inc.," "OSG America, Inc.," and "OSG Product Tankers, LLC" interchangeably in reviewing OSG's arguments that discovery is necessary upon Ms. Fischer's alleged failure to distinguish between the relevant corporate entitites.

## V. The Discovery OSG Seeks Through The Deposition of Ms. Fischer Is Explicitly Prohibited By *Impresa*

OSG argues that administrative record should be supplemented with the deposition of Ms. Fischer for a number of reasons that are explicitly prohibited by governing law. In Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1328 (Fed. Cir. 2001), the Federal Circuit held that depositions into the mental process by which the contracting officer made a decision are inappropriate.

Despite this, OSG attempts to justify its request for Ms. Fischer's deposition based upon the alleged need to determine her decision-making process. When the administrative record

contains an 18-page statement detailing the decision and the reasons for it, there is no gap in the record regarding the decision-making process. For example, OSG contends that "[t]he CO's failure to distinguish between the actual offeror and one of its ultimate parent companies requires supplementation through a deposition of the CO." Motion to Supplement at 24. It is absurd for OSG to suggest that deposition is needed to question Ms. Fischer as to why she allegedly failed to distinguish OSG from its parent. The relevant question is whether Ms. Fischer's decision was rational when the parent committed 33 felony violations. OSG further contends that the deposition of Ms. Fischer is necessary to determine "why she failed to distinguish between two separate legal entities, OSG and Product Tankers;" why Ms. Fischer allegedly failed to recognize that all violations took place on international rather than U.S. flag vessels, and why Ms. Fischer allegedly failed to recognize that debarment of OSG, Inc. would not necessarily extend to OSG. Mot. to Supplement at 26; 27; 29. None of these red herrings alter the rational nature of Ms. Fischer's decision, and constitute arguments by OSG, not gaps in the record.

This discovery seeks precisely the sort of depositions into the mental processes by which Ms. Fischer made her decision that are specifically prohibited by Impresa. Therefore, OSG's requests to supplement the record upon this basis must be denied. This case provides a good example of why such discovery is inappropriate and unnecessary. None of these allegations in any way demonstrate that Ms. Fischer's decision was irrational, especially when based upon a background of the 33 felonies of OSG, Inc.

## VI. The Administrative Record Should Not Be Supplemented With Information That Was Not Before Ms. Fischer In Making Her Responsibility Determination

OSG requests that the administrative record be supplemented with vast quantities of information that was not before Ms. Fischer in making her responsibility determination. Information that was not before Ms. Fischer in making her responsibility determination, however, is irrelevant to this Court's review of whether the responsibility determination lacked a rational basis. See Precision Standard, 69 Fed. Cl. at 745.

### A. The Court Cannot Consider Ms. Benzer's Deposition Because It Was Not Before the Contracting Officer, And Is Irrelevant To The Inquiry In This Litigation

OSG also asserts that "[t]he deposition of Agent Janet Benzer or a responsible DSS official is also requested in order to determine what advice would be given if posed an accurate question regarding OSG." Mot. to Supplement at 26. The very nature of this assertion belies Product Tanker's contentions that discovery is required regarding Ms. Fischer's inquiry into the security clearance. If Ms. Fischer's inquiry was not apparent from the record, there would be no basis for OSG to assert that it was not "accurate."

Ms. Benzer's response to whatever alternate question regarding OSG that OSG believes would be "accurate" was not before Ms. Fischer at the time she made her responsibility determination, and would be irrelevant to the Court's review of this case. Precision Standard, 69 Fed. Cl. at 745. More importantly, OSG fails to recognize that under the standard of review for bid protest actions, the information that OSG seeks through the proposed deposition of Ms. Benzer would be irrelevant. Under this standard of review, the Court reviews the decision to determine whether (1) the procurement official's decision lacked a rational basis; or (2) the

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

procurement procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332 (citations omitted); Dyncorp Int'l, 76 Fed. Cl. at 536. This is not a de novo evidentiary trial to determine whether OSG could actually obtain a facility security clearance. The relevant inquiry is whether the responsibility determination as a whole had a rational basis. Therefore, the Court can only assess whether the questions that Ms. Fischer actually posed to DSS were sufficient to support her responsibility determination, and whether she rationally interpreted the responses to those questions.

### B. The Relevant Communications With the U.S. Transportation Command Are Contained In the Administrative Record

OSG also asserts that "[w]e are also aware that there have been communications with the U.S. Transportation Command regarding OSG's eligibility for being awarded government contracts, including the T-5 Tanker Replacement Procurement. The Administrative Record does not reflect any such communications." Mot. to Supplement at 38. Apparently, OSG did not carefully examine the Administrative Record prior to making this assertion. Pages 4135 through 4181 of the administrative record contain MSC's T-5 Tanker Award Brief to General Schwartz, the Commander of the United States Transportation Command. See also AR 4050 (identifying the pages cited as "T-5 Tanker Award Brief to General Schwartz, Commander United States Transportation Command, dtd June 22, 2007").

### C. The Relevant Communications With Other Federal Agencies Are Contained In the Administrative Record

OSG also claims that "MSC should be ordered to product all communications or evidence of communications between MSC officials and other components of the Navy, or any other Department of Defense ("DoD") or civilian agency officials that related to the subject of

OSG's participation in the T-5 Tanker Replacement Procurement and its eligibility for award for this or any other contracts." Mot. to Supplement at 38. There is absolutely no basis upon which OSG could demonstrate entitlement to the broad discovery requested, which is not even limited to the award at issue before the Court in this litigation.

OSG contends that these documents are "relevant to Count I of Product Tankers' Complaint regarding the preemption of the CO's authority in light of the decision for MarAd as the lead federal agency not to debar OSG from future contracts." Mot. to Supplement at 38. At the outset, the standard for whether the administrative record should be supplemented is not merely whether the discovery requested is "relevant" to some claim that OSG may wish to advance in support of its protest. The relevant inquiry is whether the record is sufficient to enable the Court to render a decision. Impresa, 238 F.3d at 1338-39.

Defendant has already included the records of communications between Ms. Fischer and other Federal agencies relating to OSG or to the procurement that Ms. Fischer was aware of and took into account in making her non-responsibility determination. See e.g., AR 2088-91; 1961-64; 3889-92; 3894-97. Since Ms. Fischer was the final decision maker for purposes of the non-responsibility determination, only evidence of communications that Ms. Fischer participated in and took into account in making the non-responsibility determination should be contained in the record and considered by the Court in reviewing the non-responsibility determination. See 48 C.F.R. § 9.103(b); Advanced Data Concepts, Inc., 216 F.3d at 1057.

Furthermore, as a practical matter, OSG's contention that discovery on this issue is necessary makes no sense. MARAD acted as lead agency for purposes of the non-debarment decision for OSG, Inc. Either Ms. Fischer's obligation to make an affirmative responsibility

determination pursuant to 48 C.F.R. § 9.103 was legally preempted by MARAD's decision not to debar OSG, Inc., or it was not. There is nothing that documents that OSG seeks could add to the Court's review of this issue. MSC could not somehow have "waived" Ms. Fischer's obligation to perform a determination that was required by regulation through communications with another Federal agency. OSG should simply present its legal arguments, and enable the Court to issue a decision upon this issue.

### D. The Record Should Not Be Supplemented With Any Additional Briefing Materials

OSG also claims that it is entitled to discovery because it is "improbable to believe" that there was only one briefing throughout the entire period of the procurement. Mot. to Supplement at 38. Accordingly, OSG contends that "the government should produce all briefing charts, presentation materials, of supporting memoranda used to brief or discuss this procurement with MSC, the Navy . . . other DOD agencies, including U.S. Transportation Command, and any other federal agency." Id.

There is no possible basis upon which OSG could demonstrate that such broad discovery requests could be appropriate in a bid protest. None of these imagined briefings could be relevant to Ms. Fischer's decision. Indeed, such an absurd request would require defendant to conduct an extensive search across all Government agencies to determine whether this procurement was discussed, referenced, or referred to in any form of presentation, no matter how briefly, to any Federal agency. Furthermore, OSG cannot demonstrate entitlement to discovery merely by asserting that it is "improbable to believe" that there was only one briefing. If this were so, every protester would claim that it was "improbable to believe" that the record was

complete, and discovery would be granted in every bid protest action, contrary to the authority granted to this Court in the Tucker Act.

The briefing at pages 4135 through 4181 of the administrative record to General Schwartz constitutes the only briefing materials regarding OSG's non-responsibility determination for which Ms. Fischer prepared materials and participated. Briefings that Ms. Fischer did not participate in are irrelevant to the Court's review of her responsibility determination, since she was the decision maker upon this issue. See 48 C.F.R. § 9.103(b). However, if the Court feels that it requires verification of the fact that Ms. Fischer did not participate in any other briefings for which she prepared materials, for purposes of moving this case forward, defendant has no objection to the Court supplementing the administrative record with the declaration of Ms. Fischer, attached as Exhibit 1 to this opposition. See Ex. 1.

## VII. In The Unlikely Event That The Court Determines That Any Supplementation of the Administrative Record Is Appropriate, Any Discovery Must Be Narrowly Tailored

Discovery is entirely inappropriate in this APA review case. However, in the unlikely event that the Court determines that any of the discovery sought by OSG should be granted, such discovery must be narrowly tailored to any gaps that the Court believes are contained the existing evidentiary record. See Gulf Group, Inc. v. United States, 61 Fed. Cl. 338, 348 (2006) ("the Court must 'tailor discovery in bid protest cases as narrowly as the context of the procurement allows to fill gaps in the record and explain actions taken . . . . '")(quoting Emery Worldwide Airlines, Inc v United States, 49 Fed. Cl. 211, 219 (2001)), Orion, 60 Fed. Cl. at 345 ("The Court must carefully tailor discovery in bid protest cases to reduce its intrusiveness and to limit it to matters that may lead to relevant evidence."). The Court should consider whether the

extraordinarily broad document requests that OSG seeks can be narrowed to reduce the burden of defendant's response and the delay in resolving this case. In addition, the Court should consider whether declarations would suffice in lieu of the deposition testimony requested by OSG. See Orion, 60 Fed. Cl. at 345 ("Testimony from a procurement official should be the last resort."). Alternatively, if the Court determines that depositions are necessary, the Court should identify specific gaps in the agency record that need clarification, and limit any depositions to those specific issues.

**VIII. Defendant's Cross-Motion to Correct Errors In The Administrative Record**

Defendant also respectfully moves the Court to permit defendant to correct several errors in the administrative record as a result of defendant's efforts to expeditiously file the record by August 3, 2007. Defendant inadvertently omitted several past performance references for OSG and USS that the contracting officer considered and which should have been included in the administrative record. See Appendix C to the Rules of the United States Court of Federal Claims ("RCFC"), Section V ¶ 22(m)-(o). Because Ms. Fischer's responsibility determination was not based upon OSG's past performance references, defendant does not believe that these documents are likely to have any effect upon the Court's review of the responsibility determination. However, because it appears that Appendix C of the RCFC indicates that they should be included, defendant respectfully requests that the Court permit defendant to include these inadvertently omitted past performance references. See Ex. 2, SAR 4547-87.

Defendant also respectfully requests that the Court permit defendant to correct two documents that were inserted in the administrative record in error. The first is a June 1, 2007 letter contained at page 3605 in the administrative record relating to a property claim for a

contract that is not at issue in this solicitation, for a contractor who was not an offeror in the solicitation at issue in this litigation. This document has nothing to do with the procurement, and was included in the record as a mistake.

The second error relates to OSG's contention that the contract that was awarded was different from USS's final offer. See Mot. to Supplement at 17-18; 35-36. OSG contends that this entitles it to discovery, again ignoring the fact that it has no standing to challenge this or any other aspect of the procurement if it is not a responsible offeror. However, to correct any confusion that OSG's argument may cause the Court, defendant respectfully requests that the Court permit defendant to delete a page incorrectly inserted in the administrative record.

OSG contends that page 184 indicates that the final offer of USS was different from the contract award. Mot. to Supplement at 35-36. OSG is attempting to use what was an obvious error in the administrative record as an opportunity to support its desperate attempt to obtain discovery to bolster its weak case. Page 184 of the record is a duplication of page 58 of the record, which was part of USS's March 3, 2007 offer. See AR 184, 58. It was not part of USS's March 30, 2007 facsimile to MSC. Each of the other pages of the March 30, 2007 facsimile have a fax header on the top stating that the fax was from "US Shipping". See AR 182; 183, 185. Each fax header and the cover page of the fax state that the facsimile consisted of three pages. Id. The second page of the facsimile states:

> Attached please find Revision 4 to Tanktime box 9, acknowledging receipt of Amendments 0013 and 0014.
> Please include this change with our Revision 3 Price Response updating Tab 3 of Attachment 1

AR 183.

Revision 4, dated March 30, 2007, is found at page 185 of the administrative record, and contains a facsimile header stating that it is "Page 03/03." Revision 2, which OSG claims entitles it to discovery, is dated March 3, 2007, and has no facsimile header at all. Revision 3, referenced in the March 30, 2007 facsimile and contained at page 183 of the record, contains USS's redelivery bonus, which matches the redelivery bonus in the award. See AR 193. For this reason, defendant requests that the Court grant defendant the opportunity to delete page 184 of the record, which was incorrectly inserted.

## CONCLUSION

Defendant has been required to expend an extraordinary amount of effort responding to OSG's Motion to Supplement the Administrative Record, which has not identified a single legitimate basis upon which supplementation is necessary. The non-responsibility determination for OSG is the only aspect of the procurement that OSG has standing to challenge in this protest. The administrative record contains the contracting officer's non-responsibility determination, and the materials that she relied upon to make the determination. OSG should be required to simply present its arguments upon the merits of the non-responsibility determination, so that this litigation can proceed forward and the award of the contract can be resolved.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

Protected Information to Be Disclosed In Accordance with U.S. Court
of Federal Claims Protective Order Only

OF COUNSEL
CARA CONLIN
JOEL WEGER
Military Sealift Command
914 Charles Morris Ct. SE
Washington Navy Yard
Washington, D.C. 20398

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Tara Kilfoyle
TARA KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-1709
Fax: (202) 307-0972

Attorneys for Defendant

August 27, 2007

Certificate of Filing

I hereby certify that on August 27, 2007, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CROSS MOTION TO CORRECT THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Tara Kilfoyle