Protected Information to Be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| OSG PRODUCT TANKERS LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07-561C<br>Judge Hodges |
| THE UNITED STATES, | ) | |
| Defendant, and | ) | Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order |
| USS PRODUCT CARRIERS, LLC, | ) | |
| Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT AND PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Rule 7.2 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully provides this response to plaintiff, OSG Product Tankers' ("OSG's"), Motion to Amend the Complaint, which was filed on September 6, 2007. Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, defendant also moves to dismiss Count IV of the amended complaint for lack of subject matter jurisdiction.

## QUESTIONS PRESENTED

1. Whether it is appropriate for OSG to amend its complaint more than one month after both its initial complaint and the administrative record were filed in this bid protest action to add a count that it lacks standing to protest.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

2. Whether OSG has standing as a non-responsible offeror to challenge the responsibility determination of the awardee, USS Product Carriers, LLC.

## STATEMENT OF FACTS

On August 31, 2006, the Military Sealift Command ("MSC") issued solicitation No. N00033-06-R-5416 (the "solicitation") for two T-5 replacement product tanker vessels (the "tankers"). AR 2916. The tankers were primarily intended to be used for worldwide transportation of petroleum fuel for the Defense Energy Support Center ("DESC"). AR 2930, 2900, 2882, 2884, 2903-04. The evaluation criteria established in the solicitation called for award to the lowest-priced, technically acceptable offeror with satisfactory past performance. AR 2994.

OSG submitted an offer in response to the solicitation on November 30, 2006. AR 1643. On December 19, 2006, OSG's parent company, OSG, Inc., pled guilty to 33 felony counts related to deliberate vessel pollution from nine ships and false pollution log entries in three additional ships in six U.S. ports around the nation. AR 1967, 1888-1915, 1928-54. Pursuant to a Joint Factual Statement submitted by the United States and OSG, Inc., crew members aboard the nine ships, including senior ship engineers, engaged in deliberate discharges of oily mixtures in a manner that intentionally circumvented required pollution prevention equipment and violated United States law. AR 1889. These illegal discharges were concealed by use of false Oil Record Books, by making required discharges at night, and by hiding bypass equipment during port calls. Id. OSG, Inc.'s $37 million plea agreement was the largest-ever criminal

penalty involving deliberate vessel pollution, and OSG, Inc. was placed upon organizational probation. AR 1918, 1925, 1934-36.

After a series of amendments to the solicitation and proposal revisions, final offers were submitted on March 30, 2007. See AR 182-83; 1582-83. OSG and USS submitted the only offers that the contracting officer determined to be technically acceptable with satisfactory past performance. AR 3570-80. OSG was determined to be the lowest-priced technically acceptable offeror. Id., AR 3429. However, the contracting officer determined that the award could not be made to OSG pursuant to 48 C.F.R. § 9.104, because she could not make an affirmative determination that OSG was responsible, as required by 48 C.F.R. § 9.103(a), [redacted] AR 3431-48

The contracting officer then conducted a responsibility determination for USS, which was the next lowest-priced technically acceptable offeror, and only remaining offeror determined to be technically acceptable with satisfactory past performance. AR 3774-79. Ms. Fischer made an affirmative determination of responsibility for USS and on July 6, 2007, the contract was awarded to USS. AR 4064.

On July 25, 2007, OSG filed its complaint for this bid protest action. Defendant filed the Administrative Record on August 3, 2007. On August 20, 2007, OSG filed a motion to supplement the administrative record. Defendant and defendant-intervenor filed their responses to OSG's motion to supplement the administrative record on August 27, 2007. Oral argument was held on August 31, 2007.

On September 6, 2007, OSG filed both a motion to amend the complaint and an amended complaint. The amended complaint included multiple new factual allegations, and added Count IV, which alleged that the contracting officer lacked a rational basis for her determination that the awardee, USS was presently responsible. OSG contends that it has standing to challenge the responsibility determination of USS because USS was the sole remaining bidder in the competitive range. See Mot. to Amend at 2. Therefore, according to OSG, if the contracting officer's decision that USS is responsible is not rational, MSC will need to re-solicit the contract, and OSG will have a substantial chance of receiving the award in some future solicitation. Id.

## ARGUMENT

### I. Defendant's Response to OSG's Motion to Amend Complaint

Defendant is extremely concerned that OSG has filed an amended complaint at this belated juncture, because resolution of this litigation has already been substantially delayed by the extensive briefing on OSG's motion to supplement the administrative record, which the Court denied on September 10, 2007. OSG filed its initial complaint on July 25, 2007. Now, on September 12, 2007, motions for judgment upon the administrative record have yet to be filed. The tankers to be procured under this solicitation are vessels to be constructed that require significant lead time to meet MSC's required delivery date. In the near future, the tankers currently chartered by MSC will no longer be able to call at many terminals due to environmental restrictions. See AR 2903. Therefore, this bid protest must be resolved as expeditiously as possible to ensure that MSC can continue to meet its obligation to transport fuel

for DESC, and to ensure that the Navy and Air Force will continue to have DESC fuel available to support their missions. See AR 2882.

In OSG's motion to amend its complaint, OSG contends that it may appropriately amend its complaint at this juncture because RCFC 15(a) provides that a party "may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." See Mot. to Amend at 1; RFCF 15(a). However, this is a bid protest action, and as provided by the joint proposed schedule filed by the parties on July 30, 2007, defendant is ***never*** going to file an answer in response to OSG's complaint; instead, the parties are going to file cross-motions for judgment upon the administrative record. If OSG could amend its complaint at any time before defendant filed an answer, OSG could add new counts at any time prior to a final decision in this litigation.

Clearly, the rules cannot be interpreted to permit amending OSG's complaint at that late date, much less near or after the time for filing of motions for judgment upon the administrative record. To the extent that OSG contends that it can file an amended complaint at any time before the parties file cross-motions for judgment upon the administrative record, plaintiff's motion should be denied because motions for judgment upon the administrative record have not been filed to date only due to OSG's delay. Defendant filed the administrative record on August 3, 2007. On August 20, 2007, 17 days after the administrative record was filed, and 15 days after OSG received the administrative record, OSG filed a motion to supplement the administrative record and 40-page memorandum in support of its motion, containing numerous arguments regarding the ultimate merits of OSG's case. Seven days after OSG filed its motion to supplement the administrative record, defendant and defendant-intervenor filed their

responses, in which they asserted that OSG could not be entitled to discovery based upon the pricing or responsibility of USS, because OSG lacked standing to challenge USS's responsibility or pricing as a non-responsible offeror. Four days later, the Court held oral argument. The only reason that motions for judgment upon the administrative record have not been filed to date is that OSG took more than two weeks to file a lengthy and argumentative motion to supplement the administrative record, and requested oral argument on the motion.

OSG now contends that it is amending its complaint at this belated juncture to "add a Count based upon information that it first learned of from the Administrative Record submitted by the [G]overnment." Plaintiff's Motion to Amend Complaint ("Mot. to Amend") at 1. According to OSG, it had the Administrative Record, which defendant served upon OSG by Federal Express on August 3, 2007, in its possession since August 6, 2007. See Plaintiff's Unopposed Motion for Enlargement of Time to Supplement the Administrative Record at 1 (Docket Entry No. 18). However, OSG did not move to amend its complaint until September 6, 2007, although OSG was obviously aware that USS was the sole remaining offeror prior to filing its extremely lengthy motion to supplement the administrative record on August 20, 2007. See Mot. to Supp. at 2; 22; 23.

The first time that OSG indicated that it wished to amend its complaint was at oral argument on its motion to supplement the administrative record on August 31, 2007. If OSG had moved to amend the complaint to challenge the responsibility of USS prior to August 31, 2007, this issue could have been resolved at the oral argument. In fact, at oral argument, defendant presented arguments as to why OSG lacked standing to challenge the responsibility determination of USS. However, OSG did not choose to move to amend the complaint until six

days after the Court orally advised OSG that it would likely deny the motion to supplement the administrative record.

Unfortunately, although OSG has delayed resolution of this litigation in the Court, it appears that MSC is being tried in the press. On September 7, 2007, "Tradewinds," a publication for the shipping industry, published two articles regarding this bid protest. See Exs. A and B. We are unaware of the source of these articles, but they substantially quote OSG's initial redacted complaint, and include quotations from OSG. Among other allegations, one article states that OSG questions whether MSC "was up to no good in prematurely opening OSG's sealed bid." See Ex A. The second contends that while the Court is considering the question of whether OSG is responsible, it can:

> also consider a couple of others posed by the New York tanker owner: why did someone at the US Navy's Military Sealift Command (MSC) open OSG's bid at the announced deadline, only to quickly announce an extension of the tender at the request of another bidder?
>
> * * * *
>
> In the mysterious case of the unsealed envelope, OSG tells the judge it delivered a timely bid on the afternoon of 28 March, only to be told 30 minutes later of the extension. When OSG asked to retrieve its bid, it found the envelope had been opened. The company requesting the extension has never been identified, OSG says.

See Ex. B. As the Court is aware, at oral argument on August 31, 2007, OSG represented that it was withdrawing its allegation that it was entitled to discovery because MSC prematurely opened its bid in bad faith. Yet, inaccurate allegations regarding the opening of OSG's bid remain in the amended complaint filed by OSG on September 6, 2007. See Amended Complaint ¶¶ 31-35; 142-43.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

The motivation for OSG to delay in adding Count IV to its complaint are apparent. OSG will undoubtedly argue that it has a substantial chance of receiving the award in some prospective future re-solicitation for the same contract because additional time will have passed since the 33 felony violations of OSG, Inc. To ensure that MSC's mission is not jeopardized, and to avoid a trial in the media rather than the courtroom, the United States urges the prompt resolution of this bid protest. In this bid protest action, which by its very nature should be resolved upon an expedited schedule, OSG's decision to amend its complaint a month after it received the administrative record is highly questionable. As discussed below, however, regardless of OSG's motivations, its motion to amend should be denied because Count IV of OSG's amended complaint would be dismissed. As a non-responsible offeror, OSG does not have standing to challenge the responsibility of the awardee, USS.

## II. Defendant's Motion to Dismiss Count IV of OSG's Amended Complaint For Lack of Subject Matter Jurisdiction

### A. Legal Standards

Standing is a threshold jurisdictional issue. Myers Investigative and Security Serv., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002); see also Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307-08 (Fed. Cir. 2006); Dyncorp Int'l LLC v. United States, 76 Fed. Cl. 528, 536 (2007). The party invoking federal jurisdiction bears the burden of establishing the elements [of standing]." Myers, 275 F.3d at 1369 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, (1990)).

Prejudice or injury is an element of standing, and the issue of prejudice must be reached before addressing the merits of a bid protest. Info. Tech. & Applications Corp. v. United States,

316 F.3d 1312, 1319 (Fed. Cir. 2003). The Court of Appeals for the Federal Circuit has held that "to prevail in a protest, the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996); see also Galen Med. Assocs. v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004); Myers, 275 F.3d at 1369-70. To establish that it was prejudiced by an error in the procurement, OSG must establish that but for that alleged error, there was a substantial chance that it would have received the contract. See Info. Tech. & Applications Corp., 316 F.3d at 1319; Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

**B. As A Non-Responsible Offeror, OSG Lacks Standing to Challenge the Responsibility of USS**

As discussed extensively in defendant's opposition to OSG's motion to supplement the administrative record, the contract could only be awarded to an offeror that the contracting officer affirmatively found to be responsible. See 48 C.F.R. § 9.103(a); Myers, 275 F.3d at 1370; First Enter. v. United States, 61 Fed. Cl. 109, 124 fn. 24 (2004); PNM Constr. v. United States, 13 Cl. Ct. 745, 748 (1987). Therefore, if OSG is not responsible, it did not have a substantial chance of receiving the award, and lacks standing to protest any other aspect of the solicitation, including the responsibility determination of USS. See Myers, 275 F.3d at 1371.

OSG contends that it has standing to protest the contracting officer's determination that USS is presently responsible because if USS were a non-responsible offeror, MSC would be required to rebid the contract. Mot. to Amend at 2. Although the contracting officer found OSG itself to be non-responsible for this procurement, OSG contends that it would have a substantial chance of receiving the award in a prospective new solicitation for the same contract "since

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

MSC has explicitly advised Product Tankers that it would welcome its participation in future procurements." Mot. to Amend at 2.

At the outset, OSG's argument that it has a substantial chance of receiving the award in a new procurement is facially inconsistent with its contention that the contracting officer's non-responsibility determination amounted to a "de facto debarment." See Amended Compl. ¶ 92. More importantly, OSG fails to recognize that although it is welcome to participate in other, future MSC procurements, the contracting officer for this contract, Diana Fischer, has never stated that she would alter OSG's non-responsibility determination for this specific contract any time in the foreseeable future.

In her responsibility determination, Ms. Fischer specified that [redacted] AR 3444 (emphasis added). Similarly, after OSG was found to be a non-responsible offeror for this procurement, Captain Varner of the Navy sent OSG, Inc. a letter stating:

> Each solicitation and resulting contract award is considered on its own merits, including the responsibility determination required for all procurements under FAR part 9. Given that fact, it is likely that some solicitations would be more suitable for OSG's participation in the short run. For instance, procurements of shorter duration would not present some of the issues upon which the prior non-responsibility determination was made, and may be ideal candidates for OSG's proposal solicitations in the near term . . . .

AR 3463-64. Clearly, MSC has advised OSG that it would be welcome to compete for future procurements with different requirements, not for a resolicitation for the same contract occurring only a few months after OSG's initial non-responsibility determination.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

In fact, OSG was specifically informed that the nature of this specific contract made it inappropriate for OSG [redacted] The contracting officer found that:

> [redacted]

AR 3434.

OSG's contends that the Federal Circuit's decision in Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001), demonstrates that it has standing to challenge the responsibility of USS. See Mot. to Amend at 2. OSG is incorrect. In Impresa, a protestor submitted a proposal that was eliminated from the competitive range based upon a technical board's determination that its proposal was technically unacceptable, and that "a complete rewrite would be required to make the [proposal] acceptable." 238 F.3d at 1329. However, the Federal Circuit found that the protestor had standing to challenge the awardee's responsibility, because the awardee was the sole remaining bidder in the competitive range, and:

> . . . if appellant's bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the [G]overnment would be obligated to rebid the contract, and appellant could compete for the contract once again. Under these circumstances, the appellant has a "substantial chance" of receiving the award, and an economic interest and has standing to challenge the award.

Id.

OSG fails to recognize that in Impresa, the Federal Circuit did not address the standing of a protestor that a contracting officer had already found to be a non-responsible offeror for the

contract.[1] In Impresa, the protestor would simply need to re-write its technical proposal to have a substantial chance of receiving the award. Impresa, 238 F.3d at 1329. However, in the present case, the contracting officer's determination that OSG was non-responsible goes to the nature of the offeror, not the nature of the bid. Ms. Fischer determinated that, [redacted] See AR 3431-3448. Therefore, she could not affirmatively find that OSG was a responsible offeror, and the contract could not be awarded to OSG. See 48 C.F.R. § 9.103(a); Myers, 275 F.3d at 1370; First Enter. v. United States, 61 Fed. Cl. 109, 124 fn. 24; PNM Constr. v. United States, 13 Cl. Ct. at 748. In order to have a substantial chance of receiving the award, OSG would not simply need to change its bid, which was the lowest-priced technically acceptable offer. Rather, it would need to change its responsibility as an offeror, including its record of integrity and business ethics.

The Federal Circuit's decision in Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002), is specifically on point for the present case. In the decision below, the Court of Federal Claims held that the Government had violated procurement

---

[1] In Xtra Lease, Inc. v. United States, 50 Fed. Cl. 612 (2001), Judge Futey stated that in Impresa, the Federal Circuit held that "even though the protestor was deemed nonresponsible, if its protest were allowed it would have the opportunity to compete in the resolicitation." Id. at 618. Defendant respectfully notes that this description of Impresa is incorrect. The protestor in Impresa was not determined to be non-responsible; rather, the protestor was excluded from the competitive range because its proposal was rated technically unacceptable. Impresa, 238 F.3d at 1329; see also Impresa Construzioni Geom. Domenico Garufi v. United States, 44 Fed. Cl. 540, 545 (1999).

regulations by awarding a contract on a sole-source basis rather than holding a competitive procurement. Myers Investigative & Sec. Servs. v. United States, 47 Fed. Cl. 605, 620 (2000); see also Myers, 275 F.3d at 1369. However, although the remedy would necessarily have been to undo the award and conduct a competitive procurement, the Federal Circuit held that the protestor lacked standing to challenge the award. Myers, 275 F.3d at 1370-71.

The Federal Circuit held:

> In Impresa, we considered the standard to be applied where the plaintiff claims that the government was obligated to rebid the contract (as contrasted with a situation in which the plaintiff claims that it should have received the award in the original bid process). 238 F.3d at 1334. To have standing, the plaintiff need only establish that it "could compete for the contract" if the bid process were made competitive. Id. However, here Myers has not established that it could compete for the contract. The mere fact that it might have submitted a bid in a competitive procurement is not sufficient. Although it need not show that it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder. This Myers has not done.
>
> Awards may not be made to contractors that are not responsible. 48 C.F.R. § 9.103(a)(2001) . The Court of Federal Claims found that Myers "made no effort to show it was responsible and could have performed the contracts . . . . Myers, by its own admission, presented no evidence that it was qualified to secure the awards if they had been made the subject of competitive bids. Therefore, Myers has not shown that it was prejudiced.

Id.

According to Myers, to establish that it has standing where a new solicitation would be required, a protestor must still demonstrate that it is a responsible offeror. However, if OSG can demonstrate that the contracting officer's decision that OSG is not presently a responsible offeror lacked a rational basis, the responsibility of USS will be irrelevant. Upon remand, if

MSC determines that OSG is responsible, MSC ***must*** award the contract to OSG. See AR 2994, 3429.

### C. Sufficient Time Has Not Elapsed Since The Non-Responsibility Determination for OSG To Establish That It Has Changed

To the extent that OSG contends that it has standing because it will establish its responsibility over time, defendant notes that not even three months have passed since Ms. Fischer found OSG non-responsible for this contract.[2] When OSG was found to be a non-responsible offeror, it was advised by MSC that:

> As time goes on and OSG demonstrates adherence to its compliance plan, prior environmental violations will become less relevant to MSC's future responsibility determinations, and will be ameliorated by OSG's continued actions to protect the environment. It is certain that positive corporate behavior will weigh heavily in future responsibility determinations.

AR 4156. Ms. Fischer also found that to be found responsible, [redacted] AR 1783. Clearly, MSC and Ms. Fischer did not mean that OSG could become a responsible offeror for purposes of this contract simply by complying with the environmental compliance plan required by OSG, Inc.'s plea agreement for three additional months while simultaneously bringing a bid protest.

Furthermore, the burden is on OSG to establish that it has standing because it has a substantial chance of winning any prospective future award in a re-solicitation. See Myers, 275 F.3d at 1370-71; Alfa Laval Separation, Inc., 175 F.3d at 1367; Chant Eng'g Co. v. United

[2] One month of the three has been spent addressing this bid protest, including briefing OSG's motion to supplement the administrative record.

States, 75 Fed. Cl. 62, 68 (2007). OSG need not show that it would actually receive the award, but it must demonstrate that it would be a qualified bidder. Myers, 275 F.3d at 1371. Only responsible offerors are qualified to receive an award. See 48 C.F.R. § 9.103(a); Myers, 275 F.3d at 1370; First Enter. v. United States, 61 Fed. Cl. at 124 fn. 24 (2004); PNM Constr. v. United States, 13 Cl. Ct. at 748. Therefore, OSG has the burden of affirmatively demonstrating how long it would take for the contract to be re-solicited. OSG also has the burden of affirmatively demonstrating that it would become a responsible offeror in whatever time period it contends that it would take to re-solicit the contract. OSG has not explained how it believes that it has met that burden. In fact, OSG has not and can not meet that burden. Although OSG may become a responsible offeror for this contract over time, for the reasons discussed in Ms. Fischer's responsibility determination, it simply cannot affirmatively make such a showing at this juncture.

## CONCLUSION

OSG does not have standing to challenge the responsibility determination of USS as a non-responsible offeror for the procurement, and therefore, Count IV of the Amended Complaint should be dismissed. OSG should be required to submit its motion for judgment upon the administrative record challenging its own non-responsibility determination, and cease its delay tactics and efforts to re-focus this litigation on other offerors.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL
CARA CONLIN
JOEL WEGER
Military Sealift Command
914 Charles Morris Ct. SE
Washington Navy Yard
Washington, D.C. 20398

s/ Tara Kilfoyle
TARA KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-1709
Fax: (202) 307-0972

Attorneys for Defendant

September 12, 2007

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

Certificate of Filing

I hereby certify that on September 12, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT AND PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Tara Kilfoyle