# Appendix 1

**Material Factual Errors Regarding Non-Responsibility Determination**

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| ***Errors in the Contracting Officer's ("CO") Understanding of Ownership and Actual Contractor*** | | | |
| 1. | 1767 | "OSG Product Tankers, LLC is a wholly owned subsidiary of Overseas Shipholding Group, Inc." | Incorrect, Product Tankers is an indirect subsidiary of OSG. AR 3818. |
| 2. | 1769 | "If OSG violates its probation and is untimely debarred…" | Throughout the Non-Responsibility Determination, the CO uses OSG to refer to one of its ultimate parent companies, Overseas Shipholding Group, Inc., which is a distinct legal entity from Product Tankers. *See* AR 1766-83.<br>There is no direct risk that a probation violation of OSG will lead to debarment of the actual offeror, Product Tankers. Suspension or debarment does not automatically affect subsidiaries or other affiliates. Rather, affiliates of a named party to a debarment action may only be included in such action if they too are named in the action and given separate written notice and a separate opportunity to respond. 48 C.F.R. § 9.406-1(b). |
| 3. | 1769 | "If a contract were awarded to OSG, which later violated its parole…" | |
| 4. | 1769 | "…[it is] uncertain whether OSG can complete its parole with no violations." | |
| 5. | 1782 | "MSC does not have the luxury of waiting to see how OSG's probation will unfold…" | |
| 6. | 1770 | "OSG's admission of criminal actions does not directly go to its ability 'to perform the contract successfully'…" | Product Tankers, the actual offeror, has no convictions, or history of criminal actions or environmental noncompliance. |
| 7. | 1781 | "…myself as the Contracting Officer, can accept that the criminal actions for which OSG was convicted …" | |
| 8. | 1783 | "It seems incongruous to meet MSC's requirement by chartering vessels from a contractor who has pleaded guilty to 33 environmental pollution charges and paid the largest-ever criminal penalty involving deliberate vessel pollution." | |
| ***Errors Regarding the CO's Inquiry with the Defense Security Service*** | | | |
| 9. | 1768 | "Inquiries to Defense Security Service (DSS) regarding the ability of a corporation with | This conclusion relates to Product Tankers' ability to obtain a facility clearance, whereby the CO incorrectly asserts that the |

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | multiple felony convictions to obtain a clearance were inconclusive…. Based on this information it appears that OSG's ability to obtain a facilities clearance remains uncertain." | offeror, Product Tankers has multiple felony convictions, which it does not. *See* AR 1768. Section 2.109 of the NISPOM requires a separate adjudication of a parent corporation from a subsidiary. |
| 10. | 1782 | "…the fact that OSG may not be able to obtain a facilities clearance as a direct result of its criminal convictions, remains an issue." | |
| 11. | 1770 | "OSG's admission of criminal actions does not directly go to its ability 'to perform the contract successfully'…" | |
| 12. | 1768 | "Based on this information it appears that OSG's ability to obtain a facilities clearance remains uncertain." | Despite the flawed inquiry, the DSS agent responded that "it was not impossible to obtain" the clearance, which the CO interpreted in the least favorable light. AR 4134 |
| | | ***Errors Regarding the Involvement of Top Management*** | |
| 13. | 1775 | The CO alleged "direct knowledge and actions taken by 'top ship management personnel' [and] frequent and pervasive wrongdoing by high-ranking officials." | The CO's quote misstates the MarAd Report – the statement relied upon by the CO relates to shipboard officers and does not apply to corporate management. To the contrary, the MarAd Report provides that according to DOJ: "the investigation did not show that any corporate officials were involved in, planned, directed or condoned the misconduct." AR 1963. Further, DOJ informed the CO that it "did not find any evidence that OSG ordered or supported this corrupt behavior." AR 3896. The CO cites to the JFS and MarAd Report. The JFS describes one instance that occurred in 2002, which was specifically found to have been "an isolated act" involving the foreign flag operations. AR 1898. The JFS also states that "crew members … participated in illegal conduct despite [Overseas Shipholding Group's] explicit policies forbidding such activities." AR 1889-90. |
| 14. | 1776 | "…'systematic and pervasive wrongdoing' among high-ranking officers … and direct knowledge on the part of top ship management personnel…" | |
| 15. | 1775 | "OSG's failure to take disciplinary action against shore side management or its corporate officers | This statement presumes disciplinary action was warranted, contradicting the findings in the JFS (*see* AR 1889-90), MarAd |

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | … does not reflect a rehabilitative effort…" | Report (*see* AR 1963), and statements by DOJ and USCG that management was not complicit in, condoned or supported the misconduct. AR 3896. In fact, one Review Panel member provided that this was not another Enron or Tyco where the crimes were committed by senior management, rather, "[t]here is evidence that when OSG became aware their efforts were not successful, they took further action to correct it. . . . The corrective actions OSG took, support a determination of integrity and business ethics." AR 3932. |
| ***Errors Related to the State of OSG's Probation*** | | | |
| 16. | 1779 | "OSG's three year probation has yet to begin." | OSG pleaded guilty on March 21, 2007, and was sentenced to probation on the same day. The judgment order was delayed until May 24, 2007, due to other unrelated issues. The delay in issuance of the judgment order delayed the assignment of a Court Appointed Monitor, but the probation period began prior to June 19, 2007, the date the CO issued her Non-Responsibility Determination. Furthermore, OSG had implemented aspects of the ECP years before the start of probation. *See* AR 2642-46. |
| 17. | 1779 | "…rather than wait until mandatory implementation, under its Plea Agreement (which will commence with its probation period),…" | |
| 18. | 1783 | "…[the ECP] will not begin until the start of OSG's probation[,] which has been indefinitely postponed…" | |
| ***Errors Related to Severity of Problem in the Industry*** | | | |
| 19. | 1778 | "If in fact the international standards are insufficient…" | The Administrative Record indicates that international standards for pollution prevention equipment are insufficient. *See e.g.*, AR 3905 ("Sensors clog and are fouled easily and often limiting automatic operation."). |
| 20. | 1778 | CO stated that if the equipment issues OSG faced in meeting its environmental obligations were true, such problems "would be widespread throughout the industry. This does not appear to be the case." | This is unsupported by the Administrative Record and actually contradicted in three instances:<br>1. The DOJ prosecutor involved in investigating and prosecuting OSG "estimated that his office has worked on approximately 50 to 60 cases" relating to violations similar to those in which OSG pled. AR 3896.<br>2. The CO's direct supervisor emailed the CO an article regarding the plea of an employee of another oil tanker |



**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | | company that pled to similar violations as OSG. AR 4180-81. Significantly, she commented that these types of incidents were: "an epidemic…." AR 4180.<br>3. A member of the Panel emailed the CO a document from the International Maritime Organization's Marine Environment Protection Committee discussing the "widespread deliberate bypassing of the [oily water separator] and the apparently *pervasive* and regionally recognized *chronic* problems of illegal oily waste discharges." AR 3902 (emphasis added). |
| ***Egregious Factual Mischaracterizations that Amount to Errors*** | | | |
| 21. | 1773 | "OSG *waited* more than two years after the investigation had begun to engage in self disclosure." (emphasis added). | Incorrect, OSG was not aware of any misconduct, other than that identified by the Government, between the time the investigation began in 2003 and the time it began self reporting in 2005. Nothing in the AR supports the CO's statement that OSG waited to engage in self-disclosure. |
| 22. | 1774 | "OSG . . . blamed past pollution violations on cultural issues…" | Incorrect, OSG identified four root causes for the violations. AR 3815. Cultural issues were identified as a tangential reason for "miscommunications that *could* lead to noncompliance." AR 3821 (emphasis added). |
| 23. | 1774 | The CO summarized the root causes incorrectly: "(1) the crew did not fully understand the importance OSG placed on environmental compliance; (2) the crew felt environmental equipment did not work correctly; (3) the crew felt management did not give compliance issues proper priority; and (4) OSG relied on third parties to conduct vessel inspections." | In its oral and written responses to questions posed by MSC, OSG explained its [redacted] |
| 24. | 1775-76 | The CO stated that "the Panel observed that 'OSG never directly answered the question on why their senior shipboard officers engaged in the illegal activity outlined in the JFS…'" | |

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| 25. | 1777 | "…OSG still cannot definitively articulate the rationale behind its employees' efforts to evade environmental compliance measures." | [redacted] AR 3815. |
| 26. | 1781 | "It is particularly troubling that in the responses (oral and written) OSG provided to MSC's questions, a motivation for their employee's [sic] criminal behavior still had not been clearly identified." | |
| 27. | 1774 | "OSG failed to adequately explain the reason for this budgetary change [removal of the environmental budget from the vessel operations budget] in light of the fact that it repeatedly stated that the root cause analysis did not find any causal relationship between the criminal misconduct and OSG's financial structure." | OSG stated that the environmental budget was removed from the vessel operating budget to remove any incentive, based on *perceived* potential financial benefits, for crewmembers and managers to sacrifice environmental compliance for budgetary reasons. AR 3802 (emphasis added). |
| 28. | 1774-75 | "To blame these actions on misunderstandings by the crew and actions of third parties rather than acknowledge the role of management…" | OSG acknowledged that management failures were one cause for the violations in its written response to MSC (AR 3814 ("it was the inadequacy of supervision and management controls … that contributed to the violations")), in the JFS (AR 1889) and in the MarAd Report (AR 1963). |
| 29. | 1776 | The CO stated that the Panel found that OSG did not "'answer the question regarding management's inability to recognize that these actions were taking place…'" | The Company did recognize that the illegality was taking place. The JFS, Plea Agreement, MarAd Report and other documentation in the Administrative Record indicate that OSG self-reported violations on six of the 12 vessels involved, which the Government acknowledged was unknown to it at the time of the disclosures. *See* AR 1891, 1963. |
| 30. | 1777 | "However, OSG did not indicate that it discovered and corrected the root cause of … 'management inadequacies.'" | OSG identified numerous steps taken to address management inadequacies, for example: shore-side management review, reclassification and hiring of 21 new employees (AR 3821-22); the hiring of an Operational Compliance Officer (AR 3799); the creation and staffing of an Operational Integrity Department (AR |

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | | 3800); and making environmental compliance a factor for managers' performance evaluations and bonuses (AR 3806). |
| 31. | 1777 | "If the preventative steps taken by OSG in the past did not work, I cannot be confident similar preventative measures will work in the future." | OSG's oral and written responses establish that the more recent preventative measures are not similar to past measures. *See* AR 3794-3802. DOJ and USCG have also provided that the ECP of today is the "gold standard" in the industry. AR 3896 |
| 32. | 1779 | "…the question remains as to why [OSG] bifurcated the operational and environmental budgets for ships…" | OSG's oral and written responses explained that "By removing the overall environmental budget from the operations budget, the Company has sent a strong message that it will not sacrifice environmental compliance for budgetary reasons. [This] removed any incentive for shore side managers, vessel operators or sea staff to improve the financial bottom line at the expense of environmental compliance." AR 3802. |
| 33. | 1780 | "OSG has not fully demonstrated that it has the 'necessary operational controls' for the services to be performed…" | MarAd stated that "DOJ and Coast Guard personnel involved in investigating the misconduct and negotiating the ECP confirmed OSG's assertion that its ECP and the other corrective actions being implemented by OSG were more extensive and comprehensive that any previous agreement; the ECP is considered the benchmark by which future compliance plans will be measured." AR 1963. |
| 34. | 1781 | "As to 'appropriate corrective action'…the effectiveness of these new measures has yet to be proven." | MarAd stated that: "The corrective action OSG has agreed to undertake is significant . . . . Since OSG's three-year probation is dependent upon full compliance with the ECP, it is highly probable that the corrective action required will be fully implemented by OSG. DOJ and Coast Guard personnel involved in investigating the misconduct and negotiating the ECP confirmed OSG's assertion that its ECP and the other corrective actions being implemented by OSG were more extensive and comprehensive than any previous agreement; the ECP is considered the benchmark by which future compliance plans will be measured." AR 1963. |

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| 35. | 1783 | "It seems incongruous to meet MSC's [environmental] requirement by chartering vessels from a contractor who has pleaded guilty to 33 environmental pollution charges …" | Even if it is appropriate to impute OSG's conduct to Product Tankers, which we believe it is not, Product Tankers has explained that the vessels under construction, which would service this Contract, are, for the first time, being designed from the start with a focus on controlling the potential waste stream and planning in advance for equipment to address these waste streams or potential environmental hazards. AR 3839. Moreover, Product Tankers, although not violating any environmental laws or regulations itself, participates in the most comprehensive ECP in the industry, which is in fact considered the "gold standard" in the industry. AR 3896, 3931. |
| 36. | 1783 | "…33 environmental pollution charges…" | The Administrative Record provides in several places, including in the Plea Agreement and the JFS that OSG had pled to only one pollution charge, and that the other 32 violations related to recordkeeping issues. *See e.g.*, AR 2569-95. |
| ***Errors in the Record of Success/Efficacy of the ECP*** | | | |
| 37. | 1769 | "Because OSG has no record of success with its new compliance measures…" | This statement contradicts findings of DOJ, USCG and MarAd. *See e.g.*, AR 1963; *see also* AR 1839-40 (directly addressing this concern). OSG also informed the CO that it had audited the entire fleet, and had been auditing the fleet for more than one year, whereby it only found minor deficiencies that were corrected on the spot. AR 3841. |
| 38. | 1776 | "…because OSG admittedly cannot identify the reasons behind the crewmembers' alterations of the environmental equipment, questions remain as to the efficacy of the changes made…" | In OSG's oral presentation and written responses, it outlined four root causes for the illegality, the second of which directly addresses the issue of "alterations of the environmental equipment." AR 3815. |
| 39. | 1777 | "…due to the proximity in time to OSG's criminal activities and the creation of OSG's most recent compliance measures … and award of this contract, it is unknown as to whether the new measures will be effective…" | The ECP Appendix details many compliance measures the majority of which the Government recognizes and credits to OSG for implementation and effectiveness. AR 2642-46. These were implemented well before the Plea Agreement and ECP were signed in December 2006, in some cases as far back as |

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| 40. | 1779 | "MSC's Panel also notes that OSG's remedial actions are unproven." | 2002. *Id.* |
| 41. | 1781 | "…the effectiveness of [the ECP] is yet to be proven." | |
| 42. | 1777 | "…due to the proximity in time to the subject procurement, OSG lacks a record of compliance." | Product Tankers has never been alleged to have been in non-compliance. The U.S. flag operations of OSG have never been alleged in non-compliance. AR 3896. The ECP Appendix lists 24 areas that OSG met well before the execution of the ECP in December 2006, some of which date as far back as 2002. AR 2642-46. |
| 43. | 1779 | "The shortness of time between the criminal violations and the award of the solicitation … does not allow sufficient time for OSG to reestablish a record of integrity and business ethics." | The date of the last criminal violation OSG pled to was March 2006. The award of the solicitation was made nearly a year and a half later. *See* AR 3409-10. Moreover, the ECP Appendix lists 24 areas of that OSG met well before the execution of the ECP in December 2006, some of which date as far back as 2002. AR 2642-46. This includes a written response to an MSC question asserting that audits had only been completed on 15% of its vessels, whereby OSG explained that initial audits of all the vessels in OSG's fleet had been conducted before it signed the ECP in 2006, that an engineering survey of all of the vessels had been done and that OSG has begun the second phase of the ECP audit program, during which OSG had conducted 18 ECP compliant audits prior to the meeting with MSC. *See* AR 3825-26, 3841. |
| 44. | 1780 | "…not enough time has passed to determine the effectiveness of the [ECP]." | |
| 45. | 1783 | "…the fact remains that there are too may [sic] uncertainties as to the ultimate effectiveness of OSG's [ECP]. Indeed, the Reports and Court Appointed Monitor (the vehicles through which the court will oversea [sic] OSG's compliance with its Environmental Compliance Plan) will not begin until the start of OSG's probation….Due to the proximity in time between this solicitation … several questions remain unanswered..." | |
| 46. | 1779 | "…only 15% of OSG's fleet has been audited to date." | The ECP Appendix states the "Initial Audits [of the ECP] have been satisfied by the OI Department and EAG Audits that have been previously conducted by and on behalf of OSG." AR 2643. Also, in OSG's written response to an MSC question asserting that audits had only been completed on 15% of its vessels, OSG |



**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | | explained that initial audits of all the vessels in OSG's fleet had been conducted before it signed the ECP in 2006. *See* AR 3825-26, 3841. Further, OSG informed MSC that an engineering survey of all of the vessels had been done and that OSG has since moved on to the second phase of the ECP's audit program, during which OSG had conducted 18 ECP compliant audits prior to the meeting with MSC. *See id.* |
| ***Errors Related to Supporting Documents*** | | | |
| 47. | 1773 | "[T]he Court noted…" | Throughout the Non-Responsibility Determination, the CO quotes from the Government's Sentencing Memorandum in Support of the Plea Agreement ("GSM"), which she asserts as a factual finding by the presiding court. The GSM is an advocacy document. It is not a rendition of findings by the presiding court, nor is it even part of an agreed upon finding of fact like the Joint Factual Statement. |
| 48. | 1775 | "…in light of the court's observation of 'serious failures of corporate an shore-side management'…" | |
| 49. | 1777 | "…the Court notes…" | |
| ***Errors Related to the Availability of Vessels to Perform the Contract*** | | | |
| 50. | 1769 | "Due to limited anticipated availability of Jones Act vessels that will meet stringent requirements of the International Oil Industry and petroleum suppliers…" | Product Tankers' proposal explained that Aker Philadelphia Shipyard, Inc., a subsidiary of Aker American Shipping, Inc. was building 10 to 13 Jones Act eligible tankers. AR 1722. The procurement also demonstrated that other shipyards are also building several Jones Act eligible tankers. *See e.g.*, AR 53. |
| 51. | 1782 | "… a Contract must be put in place now in order for the awardee to subcontract for a shipyard to be reserved for new ship builds …" | |
| ***Errors in the Review Panel's Comments to the CO*** | | | |
| 52. | 3946 | "SUBJ: COMMENTS REGARDING RESPONSIBILITY DETERMINATION OF | The Review Panel clearly reviewed OSG, as opposed to the actual offeror, an indirect subsidiary, Product Tankers. |



**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | OVERSEAS SHIPHOLDING GROUP, INC. (OSG)" | |
| 53. | 3946 | "As a prospective offeror, per [the JFS], OSG pled guilty to 33 felony counts... " | Product Tankers, the actual offeror, has no convictions, or history of criminal actions or environmental noncompliance. |
| 54. | 3946 | ". . . OSG pled guilty to 33 felony counts related to repeated and deliberate pollution in six U.S. ports . . . " | OSG did not plead guilty to "repeated and deliberate pollution in six U.S. ports." It pled to one Clean Water Act pollution count and 32 counts related to recordkeeping. AR 2569-95. There were no charges related to any deliberate pollution in any U.S. port. |
| 55. | 3946 | "The steps OSG has taken have only been fully in place since 2006." | The ECP Appendix lists 24 areas that OSG met well before the execution of the ECP in December 2006, some of which date as far back as 2002. AR 2642-46. |
| 56. | 3946 | "It will take a three year period to complete the audit cycle on their fleet." | This is simply wrong. The ECP Appendix states the "Initial Audits [of the ECP] have been satisfied by the OI Department and EAG Audits that have been previously conducted by and on behalf of OSG." AR 2643. Moreover, in OSG's written response to an MSC question asserting that audits had only been completed on 15% of its vessels, OSG explained that initial audits of all the vessels in OSG's fleet had been conducted before it signed the ECP in 2006. *See* AR 3825-26, 3841. Finally, the Company has also completed a total of 18 ECP compliant audits prior to the May 4, 2007 meeting with MSC, whereby only minor deficiencies had been found. AR 3825-26, 3841. |
| 57. | 3947 | "It has yet to be determined that all of their remedial actions have been effective." | This statement contradicts findings of DOJ, USCG and MarAd. *See e.g.*, AR 1963; *see also* AR 1839-40 (directly addressing this concern). OSG also informed the CO that it had audited the entire fleet, and had been auditing the fleet for more than one year, whereby it only found minor deficiencies that were corrected on the spot. AR 3841. |
| 58. | 3947 | "OSG never directly answered the question on | OSG provided [redacted] |



**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | why their senior shipboard officers engaged in illegal activity outlined in the JFS, nor did they answer the question regarding management's inability to recognize that these actions were taking place . . ." | [redacted] AR 3815. The Review Panel's assertion that OSG did not recognize that the actions were taking place is belied by the fact that OSG self-reported violations on six of the twelve vessels involved in the Plea Agreement. AR 1963. |
| 59. | 3947 | "What was not stated in the root cause analysis was that there was a failure of leadership on the part of OSG management." | This statement is contradicted by the Review Panel's own comments stating: "violations continued during this period due to 'inadequacy of supervision and management controls.'" AR 3947. OSG acknowledged that management failures were a cause for the violations in its written response to MSC (AR 3814 ("it was the inadequacy of supervision and management controls … that contributed to the violations")), in the JFS (AR 1889) and in the MarAd Report. AR 1963. However, it is also clear that there was no involvement of shore side management in the violations and the violations were not condoned by management. *See supra* SOF ¶ 75n-75p. |
| 60. | 3947 | "Also, it is noted that while sea-going personnel were terminated and reported to the flag state, no comparable actions were taken against shore staff." | This statement presumes disciplinary action was warranted, contradicting the findings in the JFS (*see* AR 1889-90), MarAd Report (*see* AR 1963), and statements by DOJ and USCG that management was not complicit in, condoned or supported the |



**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**

**Agreed Upon Redacted Copy – May Be Made Public**

| No. | AR | Erroneous Statement | Explanation of Inaccuracy |
|---|---|---|---|
| | | | misconduct. AR 3896. |
| 61. | 3948 | "However, in response to the question 'Which position in the line of command is responsible for ship costs and profitability?' and 'Who receives a bonus dependent on ship costs and profitability?', OSG said that the DOJ investigations did not find any evidence that there was shore-side pressure for the crew to carry out illegal activities, that they attempt to have accountability as low in the chain as possible, and that each Ship Superintendent is responsible for five ships. This response did not fully answer the question." | The handwritten notes of one of the MSC attendees, S. Baldridge, at the oral presentation state: "Who's pay is tied to ship's profitability[?] ship superintendent & fleet managers pay is tied to ship profitability. Time." AR 3881. Furthermore, in its written responses to the MSC questions, OSG and Product Tankers answered similar questions. *See* AR 3806, 3819, 3840. |
| 62. | 3948 | "OSG has not started their three year probationary period. It will start upon the conclusion of the outstanding court case involving whistleblowers. " | OSG pleaded guilty on March 21, 2007, and was sentenced to probation on the same day. AR 2532. The judgment order was delayed until May 24, 2007, due to other unrelated issues. The delay in issuance of the judgment order delayed the assignment of a Court Appointed Monitor, but the probation period began prior to June 19, 2007, the date the CO issued her Non-Responsibility Determination. AR *See* AR 2642-46. |
| 63. | 3948 | "OSG needs to actively demonstrate, over a period of time, that their company has not only incorporated their improvements, but that their corporate behavior shows integrity and the application of good ethical business practices over the long term." | The ECP Appendix details many compliance measures the majority of which the Government recognizes and credits to OSG for implementation and effectiveness. AR 2642-46. These were implemented well before the Plea Agreement and ECP were signed in December 2006, in some cases as far back as 2002. *Id.* Further, Review Panel member James Fernan pointed out that this was not another Enron or Tyco where the crimes were committed by Senior Management, rather, "[t]here is evidence that when OSG became aware their efforts were not successful, they took further action to correct it. . . . The corrective actions OSG took, support a determination of integrity and business ethics." AR 3932. |



**Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order**