Protected Information to Be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order

Case No. 07-561C
Judge Hodges

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

OSG PRODUCT TANKERS LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant, and

USS PRODUCT CARRIERS, LLC,

Intervenor.

# DEFENDANT'S COMBINED REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S MOTION TO STRIKE

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

TARA KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-1709
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL
JOEL WEGER
Military Sealift Command
914 Charles Morris Ct. SE
Washington Navy Yard
Washington, D.C. 20398

January 4, 2008

Protected Information to Be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order

# TABLES OF CONTENTS

DEFENDANT'S RESPONSE TO OSG'S MOTION TO STRIKE. .... 2

I. OSG's Motion To Strike Is Baseless, And Should Be Denied. .... 2

A. OSG Has Mischaracterized Defendant's Arguments, And Has Failed To Explain How OSG Met Its Burden of Establishing That The Non-Responsibility Determination Lacked A Rational Basis, Or That Any Errors Were Prejudicial. .... 2

B. Defendant Has Properly Presented Arguments Based Upon The Administrative Record .... 5

C. Defendant's Arguments Regarding Ms. Fischer's Findings Regarding The Management of OSG, Inc. Are Based Exclusively Upon Ms. Fischer's Non-Responsibility Determination .... 8

D. OSG's Arguments Are An Improper Basis For A Motion to Strike. .... 10

E. OSG Has Identified No Basis For the Court To Permit The Deposition of Ms. Fischer At This Belated Juncture .... 12

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD. .... 13

I. The Arguments in OSG's Motion Have Been Fully Addressed. .... 14

II. The Contracting Officer Was Legally Required To Make An Affirmative Determination That OSG Was A Responsible Offeror For Contract N00033-06-R-5416, Including A Determination That OSG Had A Satisfactory Record Of Integrity And Business Ethics. .... 16

III. The Contracting Officer's Determination That Insufficient Time Had Passed To Establish The Effectiveness of OSG, Inc.'s ECP Was Rational .... 19

IV. OSG Has Failed To Establish That The United States Flag/Foreign Flag Distinction That It Raises In This Litigation Renders The Non-Responsibility Determination Irrational. .... 21

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

V. Defendant Has Accurately Characterized OSG, Inc.'s Criminal Violations. ....... 22

VI. Defendant Has Accurately Characterized OSG, Inc.'s Conditional Settlement Agreement With MarAD . .......... 25

VII. The Contracting Officer's Determination That She Could Not Make An Unqualified Determination That OSG Would Be Able to Comply With the Required or Proposed Delivery or Performance Schedule Was Rational ............ 26

A. OSG Has Not Established That Ms. Fischer's Determination Regarding OSG's Ability To Obtain A Facilities Clearance Was Irrational .......... 26

B. The Contracting Officer's Determination That The Effect Of A Parole Violation on The Performance Schedule Was Unknown Was Rational. .......... 28

VIII. The Contracting Officer's Mention of 53 Fed. Reg. 19,208 Does Not Render Her Decision Irrational . .......... 29

IX. OSG Has Failed To Establish Unequal Treatment Of OSG And USS. ................ 30

A. OSG Is Attempting To Challenge The Responsibility Of USS. ............... 30

B. OSG Has Failed To Demonstrate Unequal Treatment With Regard To USS's "Environmental Compliance Program," And Is Again Attempting To Challenge The Responsibility Of USS . .......................... 31

C. OSG Has Not Established That OSG and USS Were Treated Unequally With Regard To Their Abilities To Obtain Facilities Security Clearances .......... 32

CONCLUSION. .......... 33

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

## TABLE OF AUTHORITIES

## CASES

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999)....... 5

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005)....... 3

Bender Shipbuilding & Repair Co., Inc. v. United States,
297 F.3d 1358 (Fed. Cir. 2002)....... 27

C & G Excavating v. United States,
32 Fed. Cl. 231 (1994). ....... 28

Data Gen. Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996)....... 3

Dyncorp Int'l LLC v. United States,
76 Fed. Cl. 528 (2007). ....... 5

Emerald Coast Finest Produce Co. v. United States,
75 Fed. Cl. 549 (2007). ....... 3

Fisherman's Harvest, Inc. v. United States,
74 Fed. Cl. 681 (2006). ....... 11

Geo-Con, Inc. v. United States,
853 F. Supp. 537 (D.C. Cir. 1994)....... 28

H.W.A., Inc. v. United States,
78 Fed. Cl. 685 (2007). ....... 3

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001)....... 12, 13, 27

Ironclad/EEI v. United States,
78 Fed. Cl. 351 (2007). ....... 3

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

John C. Grimberg Co. v. United States,
185 F.3d 1297 (Fed. Cir. 1999)........................................ 26, 27

Rhodia, Inc. v. United States,
240 F. Supp. 2d 1247 (C.I.T. 2002)........................................ 11

**STATUTES**

48 C.F.R. § 9.103(b)........................................ 16, 25, 33

48 C.F.R. § 9.104-1(d)........................................ 16, 26

48 C.F.R. § 9.406-1(b)........................................ 28

53 Fed. Reg. 19,208........................................ 29

**TREATISES**

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004)........... 11

Protected Information to Be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| OSG PRODUCT TANKERS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant, and<br><br>USS PRODUCT CARRIERS, LLC,<br><br>Intervenor. | ) | Case No. 07-561C<br>Judge Hodges<br><br>Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order |

**DEFENDANT'S COMBINED REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S MOTION TO STRIKE**

Defendant, the United States, respectfully submits this combined reply to plaintiff's response to our motion for judgment upon the administrative record, and response to plaintiff's motion to strike. Plaintiff, OSG Product Tankers, LLC ("OSG"), has failed, in its moving papers and in its response to our motion for judgment upon the administrative record, to establish that the contracting officer's determination that she could not affirmatively find OSG to be a responsible offeror for contract N0033-06-R-5416 lacked a rational basis. Therefore, the Court should grant our motion, and deny OSG's motion.

Furthermore, OSG has failed to establish any valid basis upon which its motion to strike could be granted. In OSG's combined response, reply, and memorandum in support of its

motion to strike, ("Pl. Reply"), OSG has assumed an extremely combative and hostile tone, mischaracterized defendant's arguments, and repeatedly accused defendant of offering testimony of the contracting officer, Diana Fischer, outside of the administrative record. Defendant has not offered "testimony," but has correctly set forth OSG's burden to overturn the award, and presented arguments based upon Ms. Fischer's responsibility determination and the administrative record.

## DEFENDANT'S RESPONSE TO OSG'S MOTION TO STRIKE

### I. OSG's Motion To Strike Is Baseless, And Should Be Denied

#### A. OSG Has Mischaracterized Defendant's Arguments, And Has Failed To Explain How OSG Met Its Burden of Establishing That The Non-Responsibility Determination Lacked A Rational Basis, Or That Any Errors Were Prejudicial

OSG has accused counsel for defendant of "attemp[ing] to step into the shoes of the CO, speculating throughout [her] response what the CO really thought or why, or should have thought and why; and further alleging that even if all of the incorrect facts in her Non-Responsibility determination were corrected, it would not change her determination." Pl. Reply at 23. Based upon these allegations, OSG has moved to strike portions of defendant's motion that OSG alleges "are immaterial to the instant matter because they represent Government counsel's attempt to state what the Contracting Officer thought, intended, or would have considered, and therefore constitutes an improper attempt to supplement the administrative record regarding the contracting officer's decision process." See Plaintiff's Motion to Strike ("Mot. to Strike") at 1. OSG's accusations mischaracterize defendant's arguments, and are simply wrong.

OSG essentially argues that defendant is testifying that if Ms. Fischer had "correctly

understood" certain information, it "would not have changed her position [or decision, or determination]." See Pl. Reply at 22-23. OSG is unable to provide a single quotation from defendant's brief where this statement was made, because it was not. Defendant's actual argument, set forth in defendant's brief, is that Ms. Fischer's 18-page long single-spaced responsibility determination was supported by substantial evidence such that it was rational, because Ms. Fischer's decision was supported by numerous facts and references, not just the few that OSG contends are incorrect. See Def. Mot. at 18-19. Defendant has also argued that OSG has failed to meet its burden of establishing that any errors prejudiced OSG, such that there was a substantial chance that OSG would receive the award but for the errors. See Def. Mot. at 57-63.

Although OSG may not like defendant's arguments, defendant has correctly stated the governing law of this Court and of the Court of Appeals for the Federal Circuit. OSG appears to believe that if it can establish that Ms. Fischer made any factual errors in her non-responsibility determination, it prevails in this bid protest action. This ignores the relevant legal inquiry, and is simply not the case. See H.W.A., Inc. v. United States, 78 Fed. Cl. 685, 703-04 (2007); Emerald Coast Finest Produce Co. v. United States, 75 Fed. Cl. 549, 556 (2007). In fact, it is even not sufficient for OSG to establish that there is a "possibility" that it would have received the award but for any alleged errors. See Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996); Ironclad/EEI v. United States, 78 Fed. Cl. 351, 361 (2007). Rather, OSG must establish that there was a "substantial chance" that it would have received the award absent any actual or alleged errors in the non-responsibility determination. See Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005). OSG has not met this burden.

Apparently, OSG has no response to the merits of defendant's arguments, since OSG has not chosen to explain how it believes that it has met its burden, but instead, has pretended that defendant is testifying regarding "what [the contracting officer] would have done if she knew the true facts." See Reply at 3. In fact, it is OSG who attempts to testify that Ms. Fischer "placed significant weight" upon certain facts that she mentioned in her non-responsibility determination, or "heavily" relied upon them, in the absence of any evidence in the record to support such assertions.[1] See Pl. Reply at 30, Pl. Mot. at 23. OSG also testifies, without any citation to the administrative record, that "it is certain that the CO's erroneous conclusion that OSG, Inc.'s 'upper management' was responsible for the violations was crucial to her finding that Product Tankers was rendered non-responsible by affiliation." See Pl. Reply at 25-26.

Not only has defendant not testified regarding "what Ms. Fischer would have thought," defendant does not believe what Ms. Fischer "would have thought," is the relevant inquiry. This bid protest action is before the Court, and the relevant legal inquiry is, whether in the Court's determination, Ms. Fischer made errors such that the non-responsibility decision for OSG lacks a rational basis, and whether in the Court's determination, OSG has met its burden of establishing that there was a substantial chance that OSG would have received the award but for the errors.

Defendant also notes that OSG is attempting to shift the burden of proof onto defendant in arguing that defendant is "testifying" that any errors would not have changed Ms. Fischer's

[1] Similarly, based upon absolutely no evidence in the record, OSG testified that "[t]o organizations and individuals involved in the maritime industry, such as MSC, the significant distinctions between foreign flag and U.S. flag vessels and crew should have been obvious." Pl. Reply at 17.

decision. See Pl. Reply at 3; 20-23. Even if OSG's characterization of the relevant legal inquiry were correct, defendant would never need to demonstrate that Ms. Fischer "would not change her decision." See Pl. Mot. to Strike at 2. As the protestor, OSG bears the burden of demonstrating that Ms. Fischer's decision lacked a rational basis and that it would have received the award but for any errors in its non-responsibility determination - the Government does not bear the burden of demonstrating that OSG would ***not*** have received the award. See Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999); Dyncorp Int'l LLC v. United States, 76 Fed. Cl. 528, 537 (2007).

OSG is represented by counsel from two experienced law firms, who were undoubtedly well-aware of the relevant legal standards long before defendant's motion. To pretend that defendant's arguments on these issues constitute "supplementation of the administrative record," or "testimony" of the contracting officer is simply disingenuous.

B. Defendant Has Properly Presented Arguments Based Upon The Administrative Record

Contrary to OSG's accusations, defendant's arguments regarding Ms. Fischer's non-responsibility determination are based upon the non-responsibility determination itself, and the references that Ms. Fischer explicitly stated "were used to make this Determination." See AR 1766. Contrary to OSG's implication, defendant has not relied upon ex parte conversations with Ms. Fischer, or evidence outside of the administrative record.

It appears that OSG now contends that Ms. Fischer did not actually consider the references that she specifically stated that she considered in making the non-responsibility

determination, unless she quoted or cited to specific pages of those material in the non-responsibility determination. For example, OSG contends that there is no way to determine why Ms. Fischer imputed violations upon foreign flag vessels to OSG. See Pl. Reply at 20-21. However, as defendant explained, the written recommendation of the review panel that Ms. Fischer convened to assist her in making her determination, and which she specifically cited as a reference that she relied upon in making her non-responsibility determination, provided:

> During their oral presentation, OSG stated that their organization is "One OSG" - not divided into US v. foreign flag - and they are treated the same for their ECP and management system. Therefore, the company's business ethics are applicable across their entire fleet.

See AR 1766, 1959, 3948, 3938. OSG argues that defendant is improperly presenting arguments based upon the panel's recommendation, the plea agreement, the Environmental Compliance Plan ("ECP"), and OSG's own representations to Ms. Fischer, all of which she specifically stated that she considered. This is ridiculous.[2]

OSG also argues that defendant has attempted to improperly "supplement the administrative record" by arguing, based upon the references specifically considered by Ms. Fischer, that it was rational for Ms. Fischer to consider the 33 felonies of OSG, Inc., in determining the responsibility of OSG. Pl. Reply at 21. Ms. Fischer's non-responsibility determination for OSG makes it clear that her determination was based upon her consideration of the ramifications of the 33 felonies of OSG, Inc. See AR 1766-1783; see also Pl. Mot. at 14

---

[2] In fact, in OSG's motion, OSG recognized the review panel's determination, and proceeded to argue that the determination was unreasonable. See Pl. Mot. at 37; 41-42; 37-38.

("her conclusions were based entirely on the integrity issues that stemmed from OSG, Inc.'s convictions."). It was either rational for Ms. Fischer to consider the 33 felonies of OSG, Inc., based upon the administrative record and the more than 21 references that she specifically stated that she considered, or it was not. It is clear what Ms. Fischer considered in making her determination, because she has specified the references that she relied upon. See AR 1766-67. Defendant has appropriately argued that Ms. Fischer's determination was rational, based upon the administrative record, including the non-responsibility determination and references cited therein. There is nothing unusual or improper about defendant's arguments.

Furthermore, it is clear that OSG does not believe that OSG itself is precluded from presenting arguments based upon materials in the administrative record other than Ms. Fischer's 18-page non-responsibility determination - OSG itself boasts that it has "identified 63 [alleged] errors relied on by the CO," only "51 of which come from the 18 page non-responsibility determination." See Pl. Reply at 24. In fact, OSG has presented arguments that are not based upon the administrative record at all. For example, OSG also argues that it is "important to consider" that OSG is "partially owned by an independent third party - Aker American Shipping, Inc.," and that "the partial ownership of Product Tankers by Aker, mitigates against imputing acts or omissions of OSG, Inc. directly to Product Tankers without a relevant casual relationship." Pl. Reply at 15-16. There is no discussion about partial ownership of OSG by Aker American Shipping in the non-responsibility determination, or in the administrative record.[3] If the Court

---

[3] There is information about Aker's partial ownership in OSG's Rule 7.1 Corporate Disclosure Statement in this litigation, which was not before Ms. Fischer at the time she made

were to adopt the standard that OSG now advocates, the Court would need to strike numerous arguments presented by OSG itself.

C. Defendant's Arguments Regarding Ms. Fischer's Findings Regarding The Management of OSG, Inc. Are Based Exclusively Upon Ms. Fischer's Non-Responsibility Determination

OSG also contends that defendant has improperly testified for Ms. Fischer that she "did not mean that 'upper management directly planned or participated in OSG, Inc.'s criminal activity,' and that what the CO really meant was 'that management had an obligation to ensure environmental compliance.'"[4] Pl. Reply at 21-22. OSG's allegation that defendant has improperly testified for Ms. Fischer is absurd, in light of OSG's own allegation that Ms. Fischer's found that "that noncompliance pervaded OSG, Inc.'s top management." See Pl. Mot. at 22. Ms. Fischer did not state or find that "noncompliance pervaded OSG, Inc.'s top management," anywhere in her non-responsibility determination.

In fact, defendant actually argued that:

> Ms. Fischer did not ***assert*** that OSG, Inc.'s upper management directly planned or participated in OSG, Inc.'s criminal activity. AR 1773-75. However, she did ***recognize*** that management had an obligation to ensure environmental compliance, and failed to do so (emphasis added).

---

her non-responsibility determination. See Docket Entry No. 3. The administrative record only evidences that tankers would be owned by an affiliate of Aker Philadelphia Shipyard, which would bareboat charter the vessels to one of 13 wholly-owned subsidiaries of OSG, Inc., which would time charter the vessels to OSG. AR 1579.

[4] In this discussion, as in defendant's motion, defendant will presume that OSG is referring to OSG, Inc.'s corporate and shore-side management, as it appears that OSG does not dispute that individuals on board OSG, Inc.'s ships with management responsibilities had some direct involvement in the criminal activities. See App. 1 to Pl. Mot. at 2, Nos. 13-14.

See Def. Mot. at 43.

Amazingly, OSG contends that this is not "evidenced in the Non-Responsibility Determination." See Reply at 22. Defendant has already discussed the references relied upon by Ms. Fischer, and her findings. See Def. Mot. at 43-45. However, defendant will briefly summarize Ms. Fischer's statements and findings again, for the convenience of the Court. In the section of her non-responsibility determination discussing the role of OSG, Inc.'s management, Ms. Fischer explicitly cites to and quotes from the Joint Factual Statement, which provides that "[d]efendant's shore-side management failed to provide and exercise sufficient supervision and management controls to prevent or detect criminal violations by its employees." AR 1773-74; 1889. She also explicitly cited a section of the Government Sentencing Memorandum, which makes essentially the same finding. AR 1773. She also quoted from another section of the Government Sentencing Memorandum, which provided that OSG, Inc.'s criminal violations were so "systematic, repetitive, and longstanding that the criminal conduct amounted to a serious failure of corporate and shore-side management." AR 1773-74; 1875. Ms. Fischer also specifically discussed OSG's response to a question regarding what had been done "to prevent senior ship engineers from 'tricking' anti-pollution equipment." See AR 1774. Ms. Fischer found that "OSG did not fully explain any role OSG management had or should have had in regards to this issue." AR 1774. Ms. Fischer also specifically discussed an incident in which OSG, Inc.'s management had knowledge of a pollution incident, but did not "investigate the allegation." AR 1774. It is these findings and citations, not extrinsic evidence or speculation by defendant, that demonstrate that Ms. Fischer's concern was management's failure to ensure

environmental compliance, not that "noncompliance pervaded OSG, Inc.'s top management."

Even more ridiculous is OSG's argument that it was improper for defendant to mention that Captain Robert Johnston, the Chief Executive and president of OSG, signed the plea agreement on behalf of OSG, Inc., the settlement agreement with the United States Department of Transportation ("DOT") Maritime Administration ("MarAd") on behalf of OSG, Inc., and executed the ECP on behalf of OSG, Inc. See Pl. Reply at 26, AR 1954, 2006-08, 4157-63; see also Def. Mot. at 36-37. OSG is the party who first raised the issue of Captain Johnston - not defendant. See Pl. Mot. at 43-44. OSG also argued that "no individuals responsible for the violations of OSG, Inc.'s foreign flag vessels have any involvement with Product Tankers, OSG, Inc.'s other U.S. flag operations, or the performance of the Contract." Pl. Mot. at 14. Apparently, OSG believes that it can make whatever inaccurate or misleading representations it wishes, but defendant cannot correct these representations unless Ms. Fischer specifically made statements to the contrary in her non-responsibility determination. This is ridiculous, especially where defendant's response is directly based upon documents that Ms. Fischer said that she relied upon to make her non-responsibility determination.[5]

D. OSG's Arguments Are An Improper Basis For A Motion to Strike

Furthermore, OSG's unfounded arguments are an improper basis for a motion to strike.

---

[5] It appears that OSG argues that defendant is attempting to convince the Court that Captain Johnston was indicted or convicted of illegal activity. Pl. Reply at 28. The Court simply needs to look to defendant's motion to determine that this is not the case. Defendant explicitly stated that:"Captain Johnston was not found to have personally committed environmental violations . . . ." See Def. Mot at 14.

Rule 12(f) of the Rules of the United States Court of Federal Claims ("RCFC") provides in relevant part: "[u]pon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." There is no provision in RCFC 12(f) permitting a party to move to strike arguments that a party believes lack merit. [6] Even if OSG's accusations were true (which they are not), they would not form a basis for the Court to strike arguments in defendant's brief.

In fact, courts view motions to strike with disfavor and rarely grant them. Fisherman's Harvest, Inc. v. United States, 74 Fed. Cl. 681, 690 (2006); see also 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2004)(motions to strike are frequently disfavored because they are frequently "sought by the movant simply as a dilatory or harassing tactic."). A motion to strike should only be granted when there is a "flagrant disregard of the rules of the court," as when "the brief demonstrates a lack of good faith, or … the court would be prejudiced or misled by the inclusion in the brief of the improper material." See Rhodia, Inc. v. United States, 240 F. Supp. 2d 1247, 1249 (C.I.T. 2002). None of the applicable criteria have been met here. If OSG disagrees with defendant's arguments, or believes that the Court should not afford these arguments any weight, the proper way to address this is in OSG's

[6] It is ironic that OSG would accuse defendant of impermissibly relying upon materials outside of the administrative record in presenting its arguments, when OSG itself has advanced arguments based upon Google searches, calls to Defense Security Service ("DSS"), information about other subsidiaries of OSG, Inc., and other companies that were not part of the administrative record. See Plaintiff's Motion for Judgment Upon the Administrative Record ("Pl. Mot.") at 31-33. Defendant appropriately did not move to strike OSG's motion, but instead, responded to OSG's arguments in its response brief.

response to defendant's motion for judgment upon the administrative record. Furthermore, if the Court were to agree with OSG as to the merits of defendant's arguments, the Court is perfectly capable of simply disregarding the arguments, or affording them little or no weight.

E. OSG Has Identified No Basis For the Court To Permit The Deposition of Ms. Fischer At This Belated Juncture

OSG also argues that it should be permitted to depose Ms. Fischer "to truly know what she would have actually concluded if presented with the correct information." See Mot. to Strike at 2. However, the relevant legal inquiry is whether the non-responsibility decision lacked a rational basis in light of any factual errors. The deposition of Ms. Fischer is unnecessary for the Court to make this determination.

There would be absolutely no basis for the Court to order the deposition of Ms. Fischer at this juncture, after already denying OSG's previous request to depose Ms. Fischer on September 10, 2007. OSG has had the non-responsibility determination since July 10, 2007. AR 3428-3448. If OSG believed that it was necessary to depose Ms. Fischer to inquire what she "would have concluded" absent the alleged errors, it is unclear why OSG did not request the deposition of Ms. Fischer upon this basis in its motion to supplement the administrative record, or at a minimum, at some reasonable point in this litigation before the parties had fully briefed the issues in this litigation.

Regardless, OSG has completely failed to demonstrate that the deposition of Ms. Fischer is warranted. In Impresa Construzioni Geom. Domenico Garufi v. United States, the Federal Circuit held that "discovery of the contracting officer's reasoning is not lightly to be ordered and

should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's responsibility determination." 238 F.3d 1324, 1341 (Fed. Cir. 2001). Furthermore, even where the Court finds that record evidence suggests the agency decision was arbitrary or capricious, discovery should be restricted to "placing on the record the basis for the contracting officer's . . . determination." Id. at 1339.

At this point, this bid protest action has been pending for more than five months. The parties have fully briefed their cross-motions for judgment upon the administrative record, filing over 290 pages of briefing, based upon an administrative record that is over 4,500 pages long, and an 18-page long single-spaced responsibility determination in which Ms. Fischer specifically stated her reliance upon more than 21 references.[7] If, after all this, the Court concludes that Ms. Fischer's non-responsibility determination lacks a rational basis (which it should not), the Court should remand the procurement to MSC to permit Ms. Fischer to consider the factors specified in the Court's remand order, not order Ms. Fischer's deposition.

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

OSG has also failed to demonstrate that its non-responsibility determination lacked a rational basis. Essentially, OSG is asking the Court to find Ms. Fischer's determination that she

---

[7] The "over 290 page" figure is not intended to include plaintiff's motion to supplement the administrative record, defendant and defendant-intervenor's responses, plaintiff's motion to amend the complaint, defendant's partial motion to dismiss, defendant-intervenor's brief in support of defendant's motion to dismiss, plaintiff's motion for reconsideration, plaintiff's motion for interlocutory appeal, and defendant's responses to those motions. If those briefs were included, the briefing would exceed 470 pages.

could not affirmatively determine that OSG responsible was irrational, where OSG's parent corporation had recently pled guilty to 33 felonies, where OSG met the requirements of the solicitation by providing technical and financial information from its parent, and where OSG was to obtain the contract tankers through a time charter from wholly-owned subsidiaries of its parent. The Court should deny OSG's motion, and grant defendant's motion.

I. The Arguments in OSG's Motion Have Been Fully Addressed

In its response and reply, OSG asserts that "[t]he Government and USS do not dispute the majority of the 63 factual errors in the CO's Non-Responsibility Determination." Pl. Reply at 24. Subsequently, OSG clarifies that even OSG itself does not allege that there are "63 factual errors" in the non-responsibility determination. See id; see also App.1 to Pl. Mot. ("App. 1") Nos. 52-63.[8] Defendant has addressed the few actual factual errors in Ms. Fischer's non-responsibility determination, and has established why, in light of these errors, OSG has failed to demonstrate that Ms. Fischer's determination lacked a rational basis. See Def. Mot. at 57-63. Defendant has also addressed OSG's arguments regarding the significance and meaning that Ms. Fischer attributed to various facts, and her judgments based upon the facts.

As defendant has previously established, the majority of the "errors" in the appendix to OSG's motion are disagreements about Ms. Fischer's conclusions as to the meaning, weight, or significance of facts. See Def. Mot. at 18. Furthermore, OSG appears to believe that if it states

[8] Since OSG now contends that portions of any reference materials not specifically cited in the non-responsibility determination should not be considered by the Court in determining whether Ms. Fischer's determination was rational, according to OSG's own logic, any other errors should be disregarded.

an actual or alleged error more than one time in its chart, that counts as multiple errors. For example, OSG has counted Ms. Fischer's error regarding whether OSG, Inc., completed three as opposed to zero, months of its probation as three errors. See App. 1, Nos. 16, 17, 18.

Ten of the alleged errors are arguments that Ms. Fischer improperly attributed the criminal violations and probation of OSG, Inc., to OSG. See App. 1 Nos. 2-11. One of the alleged errors is a disagreement with Ms. Fischer's conclusions regarding OSG's ability to obtain a facilities clearance. See App.1 Nos. 9, 12. Three of the alleged errors are disagreements with Ms. Fischer's conclusions regarding the role of OSG, Inc.'s management. See App.1, Nos. 13, 14, 15. Two of the alleged errors are disagreements with Ms. Fischer's conclusions regarding the sufficiency of international standards and the pervasiveness of environmental violations in the shipping industry. See App. 1 Nos. 19, 20. Nine of the alleged errors are disagreements with Ms. Fisher's conclusions regarding whether the effectiveness of OSG's remedial measures had been established. See App. 1 Nos. 37-45. Two of the alleged errors are disagreements with Ms. Fischer's conclusion that if MSC could not obtain the contract tankers through OSG in the event of a parole violation, it could be difficult for MSC to obtain the tankers from an alternative source. See App. 1, Nos. 50-51. Furthermore, according to OSG's own description, 16 of the alleged errors are not actual errors, but rather, statements that OSG contends constitute "egregious factual mischaracterizations" See App. 1, Nos. 21-36.

Unfortunately for OSG, OSG cannot demonstrate that Ms. Fischer's determination lacked a rational basis simply by making a large chart, and OSG has not met its burden by doing so. For the reasons set forth in defendant's initial brief, OSG has failed to establish that the non-

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

responsibility determination lacked a rational basis.

II. The Contracting Officer Was Legally Required To Make An Affirmative Determination That OSG Was A Responsible Offeror For Contract N00033-06-R-5416, Including A Determination That OSG Had A Satisfactory Record Of Integrity And Business Ethics

In defendant's motion, defendant established that the plain language of the Federal Acquisition Regulation ("FAR") required Ms. Fischer to make an affirmative determination that OSG was a responsible offeror, including a determination that OSG had a satisfactory record of integrity and business ethics. See Def. Mot. at 24-26. OSG has made virtually no response to defendant and defendant-intervenor's arguments regarding the plain language of the FAR, presumably because there is no viable argument to the contrary. See Pl. Reply.

Instead, OSG argues that it never contended that Ms. Fischer "should not have performed her FAR-mandated obligation to ensure than an offeror was presently responsible." Pl. Reply at 8. However, this is precisely what OSG has argued. The FAR clearly states that, to find a contractor responsible, the contracting officer must make an affirmative finding that the contractor has " a satisfactory record of integrity and business ethics." 48 C.F.R. § 9.104-1(d); 48 C.F.R. § 9.103(b); see also Def. Mot. at 26. However, despite the plain language of the FAR, OSG contends that Ms. Fischer "lacked authority" to do so. See Pl. Mot. at 5-13.

OSG contends that it has presented "supporting authority" that Ms. Fischer was precluded from determining whether OSG had a satisfactory record of integrity and business ethics, as required by the FAR. See Pl. Reply at 8. However, OSG has not cited a single case, statute, or regulation that states that a contracting officer is not required to make a responsibility determination based upon integrity and business ethics if a debarring official has decided not to

debar an offeror upon this basis. See Pl. Mot. at 9-15. Instead, OSG repeatedly refers to "twenty-four years of practice." Pl. Reply at 8. Even if this were the case, "practice" is not supporting legal authority, and does not establish a basis for the Court to enact the practice into law.[9]

OSG also contends that defendant and defendant-intervenor are endeavoring to undercut the authority of a lead agency in determining whether a contractor should be debarred. Pl. Reply at 10-12. As defendant-intervenor correctly noted in its motion for judgment upon the administrative record, the FAR says nothing about whether a decision not to debar by an agency is effective throughout the executive branch of the Government.[10] See Defendant-Intervenor's Memoradum in Support of Defendant-Intervenor's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Its Motion for Judgment On The Administrative Record ("Def.-Int.'s Mot.") at 25. Regardless, defendant's argument is not that other agencies should ignore a decision by a lead agency not to debar - it is that a non-responsibility determination is not the same thing as a debarment, and that a contracting officer must make a responsibility determination, whether or not a lead agency has made a decision not to debar. See Def. Mot. at

---

[9] Even if OSG's statement were relevant, OSG has failed to do more than repeatedly use the phrase "twenty-four years of practice." There is no explanation in OSG's brief as to how it determined the basis for the assertion that in twenty-four years, no contracting officer has found an offeror non-responsible based upon integrity and business ethics where a debarring agency has decided not to debar the contractor upon that basis. It is more likely that OSG failed to find a decision addressing this issue, and concluded that it must not have happened.

[10] Interestingly, OSG has offered no citation in support of its contrary assertion that "a decision not to debar takes precedence and has similar government-wide effect." See Pl. Reply at 9.

27-31.

Bizarrely, OSG contends that defendant has argued that a responsibility determination has a lower "evidentiary threshold" than a debarment proceeding. Pl. Reply at 11. Defendant actually argued that according to the FAR, there is a more formal hearing process for a debarment than a responsibility determination, because of the difference in scope and consequences in being prohibited from contracting with ***any*** Executive agency, for ***any*** contract, for a period of up to three years, as opposed to being found non-responsible for a single contract by a particular agency, demonstrating that a non-responsibility determination is not equivalent to a debarment. See Def. Mot. at 28. This has nothing to do with an "evidentiary threshold."

Finally, with absolutely no supporting authority, OSG contends that there would be chaos and uncertainty for "contracting officers, as well as the DOJ" if contracting officers could make responsibility determinations based upon business ethics and integrity where a debarring official had not elected to debar a contractor. Pl. Reply at 11. The FAR presently authorizes contracting officers to do so, and there does not appear to be a state of chaos and uncertainly.[11]

Defendant is compelled to address OSG's assertion, based upon the initial draft of the MarAd recommendation, that the lead Coast Guard and Department of Justice prosecutors in OSG, Inc.'s criminal case took the position that "debarment of OSG could even be counter-productive to their enforcement efforts since it would further penalize a company that had cooperated extensively, pled guilty and been sentenced to three years probation . . . ." See AR

---

[11] OSG has not clarified what a responsibility determination has to do with the Department of Justice.

1963; Pl. Reply at 11.[12] As OSG is well-aware, and specifically discussed in its complaint, the initial draft of the MarAd recommendation was corrected to remove this statement, upon the request of the Department of Justice, because the Department of Justice did not take a position on whether OSG, Inc., should be debarred. See Compl. at ¶ 17 n.1. However, what prosecutors did or did not represent regarding the potential debarment of OSG, Inc., has nothing to do with whether Ms. Fischer could find OSG non-responsible, because a non-responsibility determination ***is not a debarment.*** See Def. Mot. at 27-31.

OSG's repeated invocations of the same admitted policy arguments in its response and reply brief do not establish that Ms. Fischer lacked legal authority to make a responsibility determination for OSG based upon integrity and business ethics. OSG's policy arguments are based upon faulty logic, have no place in a bid protest action, and provide no plausible basis for the Court to ignore the plain language of the FAR.

III. The Contracting Officer's Determination That Insufficient Time Had Passed To Establish The Effectiveness of OSG, Inc.'s ECP Was Rational

Amazingly, OSG contends that defendant did not refute OSG's contention that Ms. Fischer's contention that insufficient time had passed to establish the effectiveness of OSG, Inc.'s ECP. Pl. Reply at 29. Defendant has extensively refuted OSG's arguments on this issue at

[12] OSG has changed this statement in its response and reply brief so that it only applied to DOJ, and not the Coast Guard. See Reply at 11. In fact, the administrative record evidences that Charles ("Bud") Darr, the Coast Guard lead on the criminal case against OSG, Inc., specifically told MSC that, "there is some significant misconduct with this company (see attached documents) for which MARAD is considering suspension and debarment action . . . . [w]e are supportive of any such action MARAD chooses to take." AR 3891.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

pages 47-50 of defendant's motion. See Def. Mot. at 48-50; AR 1776-77.

It appears that OSG now argues that Ms. Fischer's determination was irrational because it was unreasonable for her to consider whether the remedial measures were actually effective at preventing crew members from tricking environmental safeguards and violating environmental requirements. See Pl. Reply at 29. There is absolutely no reason that Ms. Fischer could not consider the effectiveness of any remedial measures. See Def. Mot. at 49; Pl. Mot. at 4-13. In fact, MarAd found that although OSG, Inc.'s corrective measures constituted a significant commitment to eliminate criminal conduct:

> [t]he effectiveness of these measures, however, remains to be seen. Consequently, a settlement agreement contingent upon the company's continued compliance with the terms of probation is warranted.

AR 1964.

OSG proceeds to re-argue the issues of Ms. Fischer's statements regarding OSG, Inc.'s probation status and completion of its initial audits. Pl. Reply at 30. As defendant has explained, Ms. Fischer's conclusion was not that OSG, Inc.'s probation had not begun, or that only 15 percent of OSG, Inc.'s initial audits had been completed; it was that she could not make an affirmative determination that OSG had a satisfactory record of ethics and business integrity. See AR 1779. Ms. Fischer's discussion of OSG's integrity and business ethics in the non-responsibility determination consists of over eight single-spaced pages, and relies upon numerous facts and references. See AR 1771-1779. Ms. Fischer's statements regarding the initial audits and probation status are two of many statements set forth in support of one sub-heading out of eight describing Ms. Fischer's concerns regarding OSG's record of integrity and business ethics.

OSG has failed to establish that, in light of these two factual errors, Ms. Fischer's decision lacked a rational basis.

IV. OSG Has Failed To Establish That The United States Flag/Foreign Flag Distinction That It Raises In This Litigation Renders The Non-Responsibility Determination Irrational

In its response and reply, OSG also restates the same arguments set forth in its initial motion for judgment upon the administrative record regarding the distinction between foreign flag and United States flag vessels. Defendant has already responded to these arguments at pages 17-18, and 34-42 of defendant's response and cross-motion for judgment upon the administrative record. Defendant further notes that, even assuming for the sake of argument that it were true that as a general rule, United States flag vessels are generally less likely to commit environmental violations than foreign flag vessels, this would not establish that Ms. Fischer's business judgment that she could not affirmatively determine that OSG was a responsible offeror in light of the 33 felonies of its parent, OSG, Inc., was irrational. This is especially true where, as defendant has previously discussed, OSG itself did not focus upon the distinction regarding United States and foreign flag vessels in its responsibility presentation to Ms. Fischer. See Def. Mot. at 39-41.

OSG also argues that it is not trying to distance itself from OSG, Inc. See Pl. Reply at 15. OSG's filings evidence that this is not the case. See Pl. Memo at 44 ("the CO was well aware that the offeror was Product Tankers, and Product Tankers was only subject to potential control, or to influence or support, by U.S. flag subsidiaries and officers of OSG, Inc. who had nothing to do with the criminal violations or convictions."); id. at 45 (alleging that Ms. Fischer should have focused her review upon only "U.S. flag subsidiaries of OSG, Inc."); see Pl. Reply at 16 (it was

irrational and unreasonable for the CO to base her responsibility determination on acts of foreign crews . . . ."). If in fact, OSG believed that Ms. Fischer should consider some intermediate legal entity rather than OSG, Inc., OSG was given every opportunity to raise this argument with Ms. Fischer in its presentations regarding its present responsibility, but never did so.

OSG also argues that "the CO has clearly and solely based her Non-Responsibility Determination of Product Tankers on the violations involving some of OSG, Inc.'s foreign flag vessels, without making any attempt to justify why it is reasonable to penalize Product Tankers for such acts." See Pl. Reply at 14. The purpose of a non-responsibility determination is not to "penalize" an offeror, nor is there any evidence that Ms. Fischer intended the non-responsibility determination to be a punishment. Restating the same arguments that OSG set forth in its initial brief in its response and reply does not make those arguments more convincing, and does not establish that Ms. Fischer's determination was irrational.

V. Defendant Has Accurately Characterized OSG, Inc.'s Criminal Violations

OSG also complains that the Government falsely accused OSG of making more than one illegal discharge.[13] Pl. Reply at 4. It is unclear what relevance this has to whether the non-responsibility determination was rational. However, this argument evidences a complete lack of familiarity with the Joint Factual Statement, which was executed by representatives of both OSG, Inc., and the Government, and which OSG has characterized as "an agreed upon finding of fact. "

[13] Furthermore, OSG falsely claims that defendant admitted that OSG, Inc.'s "violations related to recordkeeping rather than pollution." See Reply at 4. In fact, defendant actually argued that this was not "a forthright and accurate representation of the crimes that occurred." See Def. Mot. at 5.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

See Pl. Mot. at 22. According to the Joint Factual Statement, "illegal discharges" were concealed, not an "illegal discharge." See AR 1889; 1915. In addition, the Joint Factual Statement provides that:

> Crew members aboard nine (9) of these ships, including senior ship engineers, engaged in deliberate discharges of machinery space bilge water and/or bilge slops, oily wastes, and oil residues in a manner that intentionally circumvented required pollution prevention equipment . . . .

AR 1889.

OSG further contends that, to the extent that Ms. Fischer relied upon a Department of Justice press release dated December 19, 2006, rather than the Plea Agreement, "her determination is arbitrary and capricious." Pl. Reply at 5. Defendant has already addressed this argument in its response to OSG's motion for judgment upon the administrative record. See Def. Mot. at 8 n.6. Furthermore, it is abundantly clear from Ms. Fischer's responsibility determination that she relied upon OSG, Inc.'s plea agreement, the Joint Factual Statement, and the Government Sentencing Memorandum, in addition to numerous other documents. See AR 1766-67. In addition, Ms. Fischer specifically requested that OSG respond to the Department of Justice press release, providing OSG with the opportunity to discredit or correct the press release. See AR 1852; 3495; 3554.

In its response and reply, OSG also argues that the Government failed to recognize the remedial measures taken by OSG, Inc.[14] See Pl. Reply at 6-7. This argument has been addressed

---

[14] Defendant assumes that OSG is arguing that the contracting officer failed to recognize OSG, Inc.'s remedial measures, since it is clearly OSG's obligation to present arguments regarding evidence in the record that it contends support its positions, not Government counsel's.

in full in defendant's motion. See Def. Mot. at 68. Ms. Fischer spent more than one and a half pages of her non-responsibility determination discussing positive steps that OSG, Inc. took to improve its environmental compliance after the Government began its investigation of OSG, Inc. See AR 1771-72; Def. Mot. at 68. However, she found that she could not affirmatively find OSG to be a responsible offeror, because there were too may uncertainties as to the ultimate effectiveness of the corrective measures. See AR 1783.

Interestingly, OSG also argues that "without the cooperation of OSG Inc.[,] and its voluntary disclosures, the 33-count Plea Agreement that the Government touts would not have happened." Reply at 7. In fact, the Government Sentencing Memorandum provides that:

> the most significant acts of [OSG, Inc.'s] cooperation, namely the disclosures of ongoing crimes committed during the government's criminal investigation, occurred after numerous other criminal offenses had already been uncovered by the United States and after certain representations made to the United States regarding the M/T Neptune and M/T Overseas Shirley and the current state of Defendant's environmental compliance proved incorrect.

AR 1878; 1773. The Government Sentencing Memorandum also provides that in the absence of OSG, Inc.'s cooperation, "the United States would have sought a substantially larger criminal fine, additional criminal counts of conviction, and a longer term of probation."[15] AR 1878; 1773.

---

[15] OSG also complains that defendant points to the Government Sentencing Memorandum as a "smoking gun." Reply at 27. Defendant has not characterized the Government Sentencing Memorandum as a "smoking gun," but has identified it as a reference that Ms. Fischer was entitled to reply upon in her non-responsibility determination. Def. Mot. at 12; 44-45. OSG has established absolutely no reason that Ms. Fischer would not be entitled to rely upon a sentencing memorandum prepared by the Government and filed in federal court, especially where OSG, Inc., itself never filed a response alleging that the Government Sentencing Memorandum was incorrect or misleading.

Nothing in OSG's response and reply alters the soundness of defendant's argument that Ms. Fischer's determination was rational.

## VI. Defendant Has Accurately Characterized OSG, Inc.'s Conditional Settlement Agreement With MarAD

OSG takes issue with defendant's characterization of OSG, Inc.'s settlement agreement with MarAd. See Pl. Reply at 13. But defendant has characterized the agreement with MarAd as exactly what it is - a conditional settlement agreement. See Def. Mot. at 32. In response, OSG argues that compliance settlement agreements are a "well-recognized approach." Pl. Reply at 13. Defendant has not argued that settlement agreements are not "well-recognized." However, a conditional settlement agreement is not the same as a finding that OSG, Inc., had affirmatively demonstrated its responsibility.[16] See Def. Mot. at 31-33. Ms. Fischer made a similar finding, yet inexplicably, OSG argues that her decision was incorrect and contrary to MarAd's decision.

The FAR does not permit Ms. Fischer to make a "conditional award" to OSG, contingent upon a settlement agreement similar to the agreement between OSG, Inc., and MarAd. Rather, in the absence of information clearly indicating that a prospective contractor is responsible, a contracting officer must make a determination of nonresponsibility, which Ms. Fischer properly did. See 48 C.F.R. § 9.103.

[16] In fact, counsel for both OSG and OSG, Inc., didn't even propose that MarAd simply find OSG, Inc., responsible - instead, he proposed that "this matter is best resolved through a compliance settlement agreement in lieu of any debarment." See AR 2103.

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

## VII. The Contracting Officer's Determination That She Could Not Make An Unqualified Determination That OSG Would Be Able to Comply With the Required or Proposed Delivery or Performance Schedule Was Rational

### A. OSG Has Not Established That Ms. Fischer's Determination Regarding OSG's Ability To Obtain A Facilities Clearance Was Irrational

In its response and reply, OSG has again expended considerable effort presenting arguments regarding its ability to obtain a facilities security clearance. See Pl. Reply at 30-32, 35-37. As defendant has already explained, to establish a prejudicial error, OSG would need to establish that Ms. Fischer's findings regarding OSG's integrity and business ethics were also irrational, Ms. Fischer was required to find that ***all*** of the criteria in 48 C.F.R. § 9.104-1 had been met to find OSG responsible. See Def. Mot. at 50-51.

In its response and reply, OSG again presents a number of complaints regarding inquiries that Ms. Fischer did not make: (1) complaints that Ms. Fischer did not raise any concerns regarding OSG's ability to obtain a facilities clearance with OSG; (2) complaints that Ms. Fischer inquired about OSG, Inc., with DSS rather than OSG; (3) complaints that Ms. Fischer made inquiries with "relatively low-level employees" of DSS who "did not occupy positions of policymaking authority." Pl. Reply at 30-32; 35-37.

Defendant has already established that, in accordance with John C. Grimberg Co. v. United States, 185 F.3d 1297, 1303 (Fed. Cir. 1999), Ms. Fischer was not required to seek additional or clarifying information from OSG. See Def. Mot. at 52. Defendant has also

demonstrated the relevance of OSG, Inc.'s ability to obtain a security clearance[17]. See Pl. Mot. at 28; Def. Mot. at 51. Furthermore, there is no reason that Ms. Fischer would not have been entitled to rely upon information from ordinary employees of DSS, the agency responsible for clearing industrial facilities and facilitating security clearance processes, and there was no obligation for her to make inquiry with officials occupying positions of "policymaking authority," whatever OSG may mean by that description.

As defendant has also previously explained, there was no obligation for Ms. Fischer to make any specific inquiries with DSS at all. Contracting officers are given wide discretion not only in making responsibility determinations but also in determining the amount of information that is required to make a responsibility determination. Impresa, 238 F.3d at 1334-35; Bender Shipbuilding & Repair Co., Inc. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002); John C. Grimberg Co., 185 F.3d at 1303.

OSG also restates its arguments that Ms. Fischer's determination was irrational because OSG contends that there is no appeal process for obtaining a facilities clearance. See Pl. Reply at 31. This argument has already been addressed at pages 52-53 of defendant's brief. As previously discussed, Ms. Fischer found that not only the length of any potential appeal process, but also the "uncertainty of the outcome" posed a performance risk. See AR 1768. OSG has not provided any substantive response to this argument.

[17] Defendant provided this explanation in a single paragraph, which OSG dismisses as "long-winded," and presents no further response to. See Pl. Reply at 31.

B. The Contracting Officer's Determination That The Effect Of A Parole Violation on The Performance Schedule Was Unknown Was Rational

In its response and reply, OSG repeats the same arguments that it presented in its opening brief regarding the effect of a debarment of OSG, Inc., upon OSG's ability to perform the contract.[18] See Pl. Reply at 14-15. Defendant has already responded to OSG's arguments, and disagrees with OSG's characterization that Ms. Fischer made "legal errors" in this regard.[19] See Def. Mot. at 54-57.

OSG also complains that defendant has argued that "it was Product Tanker's responsibility to explain the government's debarment rules to the CO." See Pl. Reply at 14. In fact, it was OSG's responsibility because OSG ***was asked a direct question*** to this effect, and did not present the explanation and argument that it currently advocates to the Court, although it was represented by the same counsel. See Def. Mot. at 55-56, AR 3917; see also Geo-Con, Inc. v. United States, 853 F. Supp. 537, 543 (D.C. Cir. 1994); C & G Excavating v. United States, 32 Fed. Cl. 231, 244 (1994). OSG's assertion, advanced for the first time in its response and reply brief, that the fact that OSG is an indirect subsidiary is relevant to whether a debarment of OSG,

---

[18] Defendant further notes that OSG continuously cites 48 C.F.R. § 9.406-1(b) for the proposition that affiliates must be "involved in or affected by the wrongdoing that is the subject of the suspension or debarment." See Pl. Reply at 15; Pl. Mot. at 35. However, 48 C.F.R. § 9.406-1(b) says nothing on the subject.

[19] Defendant is also compelled to correct OSG's misrepresentation that defendant asserted an "extensive" relationship between OSG and OSG, Inc., which defendant "conveniently and explicitly chose not to explain." Pl. Reply at 14. In fact, defendant actually stated that "defendant has already extensively discussed the relationship between OSG, and OSG, Inc., the plea agreement, and the ECP, and will not restate those arguments here." Def. Mot. at 55; see also id. at 34-36 (describing the relationship, as evidenced by the administrative record).

Protected Information to Be Disclosed Only In Accordance with U.S. Court
of Federal Claims Protective Order

Inc., would include OSG is similarly inappropriate, because despite being given the opportunity to present whatever arguments it wished, OSG never raised this with Ms. Fischer. See Pl. Reply at 25.

## VIII. The Contracting Officer's Mention of 53 Fed. Reg. 19,208 Does Not Render Her Decision Irrational

In its response and reply, OSG argues that "the CO cited as her authority to circumvent MarAd's determination as the lead agency a provision in an outdated version of a key regulation . . . .". Pl. Reply at 32. Defendant has fully addressed OSG's arguments in this regard in its initial brief, and supra at pages 16-19 in this reply. See Def. Mot. at 63. Rather than responding to the merits of defendant's arguments, OSG has again incorrectly accused defendant of "testifying" for Ms. Fischer.

Defendant also wishes to call the Court's attention to Ms. Fischer's actual statements in regard to MarAd's determination, to correct OSG's misrepresentations. Ms. Fischer stated:

> It is appropriate to make note of the very recent (18 May 2007) decision by MARAD to enter into a conditional settlement agreement with OSG vice execute a nonprocurement debarment. The criteria for responsibility differ from those of debarment. Whereas FAR 9.406-1 indicates that even though a contractor's actions may be the basis for a debarment, the debarment is not mandatory ("The existence of a cause for debarment, however, does not necessarily require that the contractor be debarred"). FAR 9.103, however, indicates that any information which casts a doubt on a contractor's responsibility, makes the contractor nonresponsible ("In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility"). Thus, an agency's failure to debar a contractor does not mean the contractor is responsible. Furthermore, a decision not to impose debarment shall be without prejudice to a subsequent imposition of debarment by any other agency. Additionally, "the fact that a bidder/protester may have been found responsible by other contracting officers during the same period in which it was found to be nonresponsible under a particular procurement

> does not show that contracting officer acted in bad faith in making a nonresponsibility determination."

For the reasons discussed in our initial brief and in this reply, OSG has failed to demonstrate that Ms. Fischer's determination was irrational.

## IX. OSG Has Failed To Establish Unequal Treatment of OSG and USS

### A. OSG Is Attempting To Challenge The Responsibility Of USS

OSG also contends that it is not actually attempting to challenge the responsibility of USS, but merely arguing that USS and OSG were treated unequally. Pl. Reply at 33. However, OSG's arguments are essentially as follows: (1) USS allegedly did not have adequate financial resources to perform the contract; (2) Ms. Fischer should have realized this; (3) therefore, she did not examine the responsibility of USS closely enough, and must have treated OSG and USS unequally. See Pl. Mot. at 50-52; Pl. Reply at 32-35. Verbatim, OSG's argument is that:

> If the treatment had been equal, the CO would have accepted MarAd's determination not to debar as conclusive on issues of OSG, Inc.'s integrity, or would have determined USS to be non-responsible.

Pl. Reply at 35; see also Pl. Mot. at 52 (alleging that Ms. Fischer's conclusions regarding the responsibility of USS are "so superficial and illogical as to be arbitrary and capricious."). Clearly, OSG's "unequal treatment" arguments are nothing more than a back-door endeavor to challenge the responsibility of USS.

Defendant and defendant-intervenor have already explained that OSG has not established any unequal treatment. See Def. Mot. at 64-69; Def.-Int. Mot. at 43-46. Furthermore, the record indicates that USS explained how the construction of the tankers would be financed, that Ms.

Fischer requested that USS submit documentation in support of its financial resources, that USS did so, and that USS's financial resources to perform the contract were considered by MSC's business analysis committee. See AR 8-10; 3775; 3696; 3996-4032; 4049. OSG is obviously unhappy that, as a result of the information sought by MSC and provided by USS, Ms. Fischer found that USS had adequate financial resources to perform the contract, or the ability to obtain them, and clearly disagrees with Ms. Fischer's determination. See Pl. Reply at 33-35; Pl. Mot. at 52-53. However, the Court has held upon more that one occasion that OSG has not established standing to challenge the responsibility of USS, and OSG's disagreement with Ms. Fischer's conclusion regarding USS's responsibility is not evidence of unequal treatment.

B. OSG Has Failed To Demonstrate Unequal Treatment With Regard To USS's "Environmental Compliance Program," And Is Again Attempting To Challenge The Responsibility Of USS

OSG also uses its response and reply to launch attacks upon the "environmental compliance program" of USS.[20] Reply at 37. Defendant has already explained that, although Ms. Fischer had no reason to believe that USS had any issues regarding environmental offenses, she took appropriate and thorough measures to investigate the environmental compliance of USS. See Def. Mot. at 65-66. OSG does not appear to be challenging the investigation conducted by Ms. Fischer, but rather, the "environmental compliance program" of USS, again attempting to challenge the responsibility of USS.

[20] At the outset, it does not appear that USS has an "environmental compliance program;" but rather, an "Environmental Protection Policy." See AR 3959, 3978.

Furthermore, OSG does not even explain in any detail what it believes the problems with USS's environmental protection policy are, other than that they are not the "world class ECP" required by OSG, Inc.'s plea agreement to 33 felonies. See Pl. Reply at 37. Of course, the relevant inquiry is not whether USS's Environmental Protection Policy was as good as OSG's, ECP, but rather, whether Ms. Fischer applied unequal standards in assessing the responsibility of OSG and USS. USS's Environmental Protection Policy was obviously working effectively, as USS was able to certify that no vessels owned or operated by USS Vessel Management, LLC had been cited for any criminal offenses, or unreported or intentional violations of the Clean Water Act, MARPOL regulations, or other violations relating to deliberate vessel pollution, and that USS Vessel Management, LLC, had received a number of awards for environmental excellence. AR 3976-77, 3979.

C. OSG Has Not Established That OSG and USS Were Treated Unequally With Regard To Their Abilities To Obtain Facilities Security Clearances

OSG also asserts again that it has been treated unfairly in comparison to USS with regard to its ability to obtain a facilities clearance. See Pl. Reply at 33. OSG argues that defendant is trying to establish a new standard for whether a contractor would be able to obtain a facilities clearance, and that it was not absolutely certain that USS could obtain a facilities clearance. Citing pages 3393, 3505, 3627 of the AR, OSG now contends that "MSC evaluators were not satisfied that USS could meet this requirement, and the CO expressed her concern to USS." Pl. Reply at 35. These references demonstrate that MSC requested that USS provide information regarding this requirement, because MSC wanted offerors to address it in their proposals, not that

MSC or Ms. Fischer were "concerned" about USS's ability to meet the requirement, or "not satisfied" with USS in this regard. See AR 3393, 3505, 3627.

Ms. Fischer could not award the contract unless she could affirmatively determine that the offeror could obtain a facilities clearance - she needed to be satisfied that the offeror ***could*** do so, not just that it was possible. See 48 C.F.R. § 9.103(a)-(b). USS's parent corporation had not been convicted of 33 felonies. OSG's parent corporation had. In light of this, Ms. Fisher's determinations regarding OSG and USS's abilities to obtain facilities security clearances do not evidence unequal treatment.

## CONCLUSION

For these reasons and the reasons set forth in defendant's opening brief and response, defendant respectfully requests that this Court grant defendant's motion for judgment upon the administrative record, and deny OSG's motion. Defendant also respectfully requests that the Court deny OSG's motion to strike.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Tara Kilfoyle
TARA KILFOYLE
Trial Attorney
Commercial Litigation Branch
Civil Division
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-1709
Fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL

JOEL WEGER
Military Sealift Command
914 Charles Morris Ct. SE
Washington Navy Yard
Washington, D.C. 20398

January 4, 2008

Certificate of Filing

I hereby certify that on January 4, 2008, a copy of the foregoing "DEFENDANT'S COMBINED REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S MOTION TO STRIKE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Tara Kilfoyle