# APPENDIX

| Allegation | Response | Number |
|---|---|---|
| Ms. Fischer improperly considered the 33 felonies of OSG, Inc., in her responsibility determination for OSG. | OSG contends that "it would be difficult for OSG to manage its vessels under differing operational standards. Because the ECP applies to all ships managed by OSG, and because it is an essential part of OSG's SMS [Safety Management System], it will be implemented on those ships operating under the MSC contract in exactly the same manner as any other ship technically managed by OSG." AR 1833 | 1. |
| | The contract tankers were to be owned by an affiliate of APSI, and bareboat chartered to one of 13 wholly-owned subsidiaries of OSG, Inc. AR 1579. The wholly-owned subsidiary or subsidiaries of OSG, Inc., would the time charter the vessels to OSG, who would charter the vessels to charterers needing Jones Act tonnage. AR 1579. | 2. |
| | OSG's plea agreement was binding upon OSG, Inc., and its subsidiaries, including all subsidiaries that technically managed and/or manned vessels, and all successors-in-interest and assigns. AR 1946-47; 4157. OSG is a subsidiary of OSG, Inc. AR 1833. | 3. |
| | The technical narrative submitted by OSG described the corporate profile and experience of Overseas Shipholding Group, Inc. AR 1652-1687 | 4. |
| | OSG's offer also included an ISO 9001 certification of compliance for OSG Ship Management, Inc. AR 1715. Similarly, the response include a certification of compliance regarding the environmental management system of OSG Ship Management, Inc. AR 1716. | 5. |
| | As part of its proposal, OSG provided a "Corporate Viability" statement required by the solicitation in the form of a U.S. Securities and Exchange Commission Form 10-Q for Overseas Shipholding Group, Inc. AR 4352-4407. | 6. |

| Allegation | Response | Number |
|---|---|---|
| | OSG submitted the confirmation of insurance required by the solicitation as a confirmation of insurance for "OSG Shipholding Group Inc., et al." AR 4201. OSG's offer included a Licensed Deck Officers' Handbook for OSG Ship Management, Inc. AR 4494. | 7. |
| | OSG's offers for the solicitation used the same New York address as OSG, Inc. See AR 1691, 4187, 1585-88, 1610, 1625-34. | 8. |
| | OSG's performance would be guaranteed by OSG, Inc. AR 1619. | 9. |
| | Captain Johnston, the Senior Vice President and Head of Shipping Operations for OSG, Inc. is identified as the Chief Executive and President of OSG. AR 3704; AR 1665-1666. | 10. |
| | A Dun & Bradstreet Report for OSG indicated that a self-request was made to establish a record on October 30, 2006, by Robert Johnston. AR 3704. The Dun & Bradstreet report indicated that OSG management represented that OSG was an LLC in New York State, had 25 employees, and provided deep sea foreign transportation of freight. AR 3705. | 11. |
| | OSG's response to the lack of a comprehensive D& B Report: "If MSC is looking for financial information etc., all information is consolidated under the parent company, and can be found at **www.osg.com.** The NYSE ticker symbol for the parent company is OSG." AR 1618 | 12. |
| Ms. Fischer improperly considered the 33 felonies of OSG, Inc., because they did not occur on foreign flag vessels. | OSG stated that their organization is "One OSG" - not divided into US v. foreign flag. AR 3948, 3938. | 13. |
| | OSG's plea agreement was binding upon OSG, Inc., and its subsidiaries, not just foreign flag subsidiaries. AR 1946-47; 4157. | 14. |

| Allegation | Response | Number |
|---|---|---|
| | The plea agreement required that the ECP apply to all oceangoing vessels that were technically managed or manned by OSG, Inc., not just foreign flag vessels. AR 1936, 1980. | 15. |
| | OSG provided past performance references for non-Jones Act vessels. AR 4570. | 16. |
| | See 1-12. | 17. |
| Ms. Fischer improperly inquired about a security clearance for OSG, Inc., with DSS. | NISPOM 2.109 - "As a general rule, the parent must have an FCL at the same, or higher, level as the subsidiary." | 18. |
| | Contract tankers to be technically managed by OSG, Inc. AR 1833. | 19. |
| | Ms. Fischer was required to make an "unqualified determination" that OSG could comply with the requirement to obtain a facilities clearance. 48 C.F.R. 9.103(b). | 20. |
| Ms. Fischer stated that OSG was a wholly owned subsidiary of OSG, Inc. | OSG did not explain the alleged significance of being an indirect subsidiary. AR 1833. | 21. |
| | See 1-12. | 22. |
| OSG, Inc.'s crimes were "recordkeeping violations." | OSG, Inc.'s illegal discharges were concealed by use of false Oil Record Books, a required log that is regularly inspected by the Coast Guard. AR 1889. | 23. |
| | Had the Coast Guard known the truth - that required pollution prevention equipment was being intentionally circumvented and that official ship records were being deliberately falsified - the agency could have detained the ships, refused port entry and required repairs. AR 1889. | 24. |

| Allegation | Response | Number |
|---|---|---|
| | OSG, Inc.'s crime involved a violation of the Clean Water Act, obstruction of justice, false statements, conspiracy, and violations of the Act to Prevent Pollution From Ships. AR 1975, 1934. | 25. |
| Ms. Fischer alleged that the senior management of OSG, Inc., was involved in the violations. | Ms. Fischer found that "[a]lthough the Government attributed the incidents to problems with upper management, OSG failed to adequately address the role of its upper management in relationship to the criminal activities." AR 1776. | 26. |
| | The Government found that "OSG's criminal conduct amounted to a serious failure of corporate and shore-side management." AR 1875. | 27. |
| | The Government found that OSG, Inc.'s "criminal conduct did not involve a solitary violation that might be explained as a single instance of bad judgment of the acts of a rogue employee. The violations at issue in this case were so systemic, repetitive, and longstanding that the criminal conduct amounted to a serious failure of corporate and shore-side management. SOG and its shore-based managers are ultimately accountable for this failure. It wold not be accurate to suggest that OSG's convictions are due to the bad acts of only a few company employees." AR 1875. | 28. |
| | The Joint Factual Statement provided, "[w]hile [] crew members engaged in the knowing and deliberate violation of the law, [OSG, Inc.'s] management failed to provide and exercise sufficient supervision and management controls to prevent or detect criminal violations by its employees." AR 1889. | 29. |

| Allegation | Response | Number |
|---|---|---|
| | The Joint Factual Statement provided that "one benefit of Defendant's MARPOL related crimes was financial. Costs avoided included paying for the cost of offloading sludge and oily waste in port, and, perhaps most significantly, the time (and related costs) needed to make arrangements to offload waste in port." AR 1890. MSC was concerned about regarding management's inability to recognize that these actions were taking place "considering [the] number of occurrences and the cost savings of not discharging legally." AR 1776. | 30. |
| Suspension and debarment of OSG, Inc. would not affect OSG's performance of the contract. | When asked what would happen if there were an environmental incident, OSG responded, "OSG can't guarantee what actions MarAd and EPA are going to take. Since OSG has implemented significant changes in our management and operations systems, we don't expect that they will debar us. The EPA generally prefers to allow the company to continue doing business with a new system in place rather than debarring them. Mr. Pavlick notes that OSG has cooperated greatly with the government." AR 3917. | 31. |
| | As an affiliate, OSG could be debarred if named and given the opportunity to contest the action. 48 C.F.R. 9.406-1; 49 C.F.R. § 29.625. | 32. |
| | See Items 1-12. | 33. |
| Ms. Fischer misunderstood the date that OSG, Inc.'s probation for the 33 felonies began. | Ms. Fischer believed that probation for OSG Inc.'s 33 felonies would not begin until the related whistleblower case was concluded. AR 1783. | 34. |
| | Ms. Fischer's decision was not irrational because OSG, Inc. was sentenced for the 33 felonies that occurred over course of several years less than three months earlier, on March 21, 2007. AR 2532; 1888-1915. | 35. |

| Allegation | Response | Number |
|---|---|---|
| Ms. Fischer erroneously concluded that insufficient time had passed to demonstrate the effectiveness of the ECP. | The MarAd recommendation stated that "[t]he corrective measures set forth in the Plea and ECP and in the supplementary materials submitted to this office by OSG constitute a significant corporate commitment to combat and eliminate the criminal conduct engaged in by so many of its employees. The effectiveness of those measures, however, remains to be seen." AR 1964. | 36. |
| | Joint Factual Statement notes that "[n]otwithstanding the fact that Defendant placed control technology on its ships . . . the new anti-tricking equipment was itself tricked by senior ship engineers shortly after installation." AR 1777, 1893. | 37. |
| | The Joint Factual Statement discusses the fact that violations continued after new compliance measures were implemented, and the fact that the compliance equipment was tricked. AR 1906-07, 1911-12; 1903; 1904-05; 1893; 1777; 1893. | 38. |
| Ms. Fischer misunderstood the status of OSG, Inc.'s Initial Audits. | Ms. Fischer understood that OSG, Inc. elected to undertake its ship audit Program in 2006 rather than wait until mandatory implementation under the Plea Agreement. AR 1779. | 39. |
| | The ECP required OSG, Inc., to conduct several different types of audits. AR 1810 ("OSG now boasts a comprehensive multi-layered audit program that consists of a three-phased audit plan, whereby independent third-party auditors are retained, various internal and external audits are conducted, an a court appointed monitoring function provides oversight."). | 40. |
| | Ms. Fischer's decision would not be irrational if she incorrectly stated the status of the initial audits required by OSG, Inc.'s plea agreement to 33 felonies that occurred overthe course of several years. AR 1888-1915. | 41. |

| Allegation | Response | Number |
|---|---|---|
| Ms. Fischer did not appreciate OSG, Inc.'s cooperation during the Government's investigation of the criminal activities. | Ms. Fischer recognized that OSG provided meaningful and significant cooperation in support of the Government's investigation. AR 1771. | 42. |
| | The most significant acts of cooperation, namely the disclosures of ongoing crimes committed during the Government's criminal investigation, occurred after numerous other criminal offenses had already been uncovered by the United States and after certain representations made to the United States regarding the M/T Neptune and M/T Overseas Shirley and the current state of OSG, Inc.'s environmental compliance proved incorrect. AR 1878. | 43. |
| | The Government found that OSG, Inc.'s disclosures were not always sufficient or timely. AR 1879. The Joint Factual Statement also stated that OSG, Inc.'s disclosures were not always sufficient or timely. AR 1892. | 44. |
| Ms. Fischer did not acknowledge the ECP. | Ms. Fischer stated that the "ECP developed by OSG surpasses any other in industry today." AR 1772. | 45. |
| | The ECP was incorporated into OSG, Inc.'s plea agreement by reference, and compliance with the ECP was a special condition of OSG, Inc.'s probation. AR 1936, 1980. | 46. |
| | Based upon MarAd's decision and other evidence, Ms. Fischer found that the effectiveness of the ECP remained to be seen. See AR 1783, 1964;Numbers 37-38. | 47. |